E. F. ROBERTS, RESPONDENT, v. STATE FARM MUTUAL AUTOMOBILE INSURANCE CO., A CORPORATION, APPELLANT.—203 S. W. 2d 508.

Kansas City Court of Appeals. Opinion delivered June 16, 1947.

*Waldo Edwards* and *D. L. Dempsey* for appellant.

264

*L. F. Cottey* and *Allen Rolston* for respondent.

SPERRY, C.—E. F. Roberts instituted suit to recover damages to his ¾ ton Dodge Pick-up truck, on an insurance policy issued by the State Farm Mutual Automobile Insurance Company. Trial was to the court without a jury and from a judgment for plaintiff in the amount of $251.10, for damages to the truck, and for $100 attorney's fees, defendant appeals.

Defendant contends that the loss was shown, by the evidence, as due to a cause excluded from the policy coverage.

Plaintiff pleaded the policy and its issuance, and that " * * * * * such automobile, by reason of cause unknown to plaintiff, other than that said automobile was heavily loaded and being driven over bad and muddy roads, became torn, damaged and broken in its motor and engine and all parts of such automobile connected with such motor and engine. * * "

Defendant pleaded certain "Exclusions" that are provided in the policy, and denied liability.

The policy was introduced in evidence and is styled "National Standard Combination Automobile Policy." On the page which contained a description of the vehicle insured and a statement of the various risks covered, together with premium charges and limits of liability, there appeared the following, in heavy type:

"The insurance afforded is only with respect to such and so many of the following coverages as are indicated by special premium charge or charges. The limit of the company's liability against each such coverage shall be as stated herein, subject to all the terms of the policy having reference thereto."

There follows:

"                              Coverages

A. Bodily injury liability.

B. Property damage liability.

C. Comprehensive.

"    (Includes fire, theft and other damage.)

D. Fire, windstorm, theft, etc.

E.  Collision-Eighty (80%) per cent.

F. Collision-movable objects.

G. Collision-deductible.

H.  Emergency road service, bail bond expense."

Premium charges are shown in connection with "A," "B," "C," and "E."

On the next page it is stated that the company "Does hereby agree with insured * * * subject to the limits of liability, exclusions, conditions, and other terms of the policy.

"                    INSURING AGREEMENTS

* * * * * * *

"Coverage C—Comprehensive Loss or of Damage to the Automobile, Except by Collision. To pay for any loss or of damage to the automobile, hereinafter called loss, except loss caused by collision of the automobile with another object or by upset of the automobile or by collision of the automobile with a vehicle to which it is attached. Breakage of glass and loss caused by missiles, falling objects, fire, theft, explosion, earthquake, windstorm, hail, water, flood, vandalism, riot or civil commotion shall not be deemed loss caused by collision or upset."

Immediately below the portion devoted to "Insuring Agreements" in similar type, although the policy is folded at this point, appears the following:

"   .      .           EXCLUSIONS

"This policy does not apply* * * *

(i)  Under coverages C, D, E, F, and G, to any damage to the automobile which is due and confined to wear and tear, freezing, mechanical or electrical breakdown or failure, negligent repair or service, or loss of tools or repair equipment, unless such damage or loss is the direct result of a theft, covered by this policy, of the entire automobile; * * * "

266

The remainder of this page is devoted to a section denominated "Conditions."

This entire sheet is devoted to stating the terms of the contract with particularity: "Insuring Agreements," "Exclusions," and "Conditions," the title of all sections appearing in identical size type and the printed matter appearing under "Exclusions" and "Conditions" being in type similar in appearance to that used under the section designated "Insuring Agreements."

The evidence is fairly summarized in plaintiff's brief, and is as follows:

"On the morning of February 6, 1946, while the aforesaid policy of insurance was in full force and effect, respondent's employee Harbison started out in the truck to deliver a 2110-pound load of corn and oats to a customer living in the country. The truck was in good condition at the time. The road was hilly and muddy. On the way, from some undisclosed cause the truck developed a knock and lost power rapidly; it wouldn't pull, it stopped and had to be restarted frequently. Harbison nursed it along and finally got it back to Queen City about noon under its own power, but obviously in bad condition.

"Respondent and his wife had planned to use the truck that afternoon to drive to Kirksville. However, its condition was such that they stopped at a neighborhood garage operated by witness Conner to inquire whether it was capable of making the trip. Conner told them it might get them to Kirksville if they drove slowly, so they started, driving slowly. But after a mile from town the noise in the truck's engine became so alarming they turned around and came back to the garage. Conner heard them coming; said the truck had a sound 'like a blacksmith hitting an anvil.'

"Conner's examination disclosed that the motor 'had developed damage all at once;' that the pan was half full of babbitt, melted into little particles' which had come out of the bearings between the connecting rods and the crankshaft; that one piston was cracked. Repair of the damage required the installation of a new motor in the truck, at a cost of $125.10, which was shown to be reasonable. There was no other evidence as to the nature or extent of the damage, and no expression of opinion or any other showing as to what caused it. Appellant neither offered any evidence on its own behalf nor cross-examined any of respondent's witnesses."

It is plaintiff's position that he made out a prima facie case, under the terms of coverage "C," when he offered substantial evidence tending to prove that the motor became damaged in some manner other than by collision; and that it was then incumbent on defendant to prove that the damage resulted from a cause excluded from coverage. In support of his contention in this respect he cites Godfrey v. St.

Paul Fire and Marine Ins. Co., 232 S. W. 231, wherein it is held that plaintiff made a prima facie case by proving the policy and a loss, and that if defendant claimed the loss was due to a cause excluded from coverage it must prove such affirmative defense. That decision follows the general rule. 33 C. J. 111; Gannon v. Laclede Gas Light Co., 145 Mo. 502, l. c. 516; Gilpin v. M. K. & T. Ry. Co., 197 Mo. 319, l. c. 325. However, plaintiff's evidence in this case not only proved the damage but also tended to prove the cause of the damage. Such evidence is uncontradicted and positive, and constitutes all of the evidence there is on the question.

The driver of the truck testified to the effect that he drove it daily prior to the occasion when it became damaged; that on this date he drove it from plaintiff's place of business to deliver a load of feed to a customer; that, when he started on the trip, the truck was "All right so far as I could see." The record discloses the following with reference to the damage complained of and how it occurred:

"Q. What was the condition of the truck?

A. I don't know. It just got so it wouldn't run hardly. It had a knock.

Q. When did you discover it?

A. Out there by Shirley Yearns.

Q. What did you do with the truck from there on?

A. I walked back and forth until I got the load off.

Q. The truck stopped?

A. Yes, and I would have to re-start it.

Q. What time of day was that?

A. It was in the morning that I went out, I thought, I got back by noon—something like that.

Q. How did the truck work?

A. It didn't work going.

Q. What was the matter?

A. It wouldn't pull.

Q. No power?

A. No power—no pep at all."

It was shown that plaintiff drove the truck to a garage after the driver got back from delivering the grain.

The garage operator, who repaired the truck by installing a new motor, testified as follows:

"A. They said they had to go to a doctor, and I said 'if you drive slow, you might make it.' They started out and went about a mile. It developed quite a knock and they came back.

Q. Could you hear the truck coming in?

A. It sounded like a blacksmith hitting an anvil.

Q. Did you take the car in your garage?

A. I pushed it in.

Q. At the time you started to look at it, was anyone with you?

A. Mr. Cassidy.

Q. Does he work for you?

A. Yes, sir.

Q. For how long?

A. Twenty one or two years.

Q. When you started to take the truck apart, did you notice any recent damage?

A. It developed all at once.

Q. What was it?

A. We took the fan off and it was full of babbitt. We took the connecting rod off and the metal off the shaft. The piston was cracked, I think.

Q. What was the condition of the babbitt you found in the fan?

A. It was melted into little particles.

Q. Where did that come from?

A. Out of the bearings between the connecting rod and the crank shaft.''

We think plaintiff went further with his evidence than merely making out a *prima facie* case under the provisions of coverage "C" on the policy. In order to show the condition of the automobile, to wit, that it was damaged, "it became necessary for the plaintiff to show the whole condition (of the automobile before and after the damage was sustained) and in doing so he showed a condition that spoke for itself. * * * '' Gilpin v. M. K. & T. Ry. Co., supra, l. c. 326. He showed that the damage was due to *mechanical failure and nothing else.* Thus, in proving that the automobile was damaged, he also proved that the damage was due and confined to mechanical failure. The evidence offered by plaintiff established this fact and it was unnecessary for defendant to offer evidence on the question of the cause of damage. The plaintiff sought to leave the subject at that point without any further evidence or explanation; but the thing spoke for itself. Gilpin v. M. K. & T. Ry. Co., supra.

The evidence that proved the *cause* of the damage is indicated in the testimony of the mechanic. The mechanic testified to the effect that the motor "developed damage all at once," that the fan was full of babbitt melted into little pieces, that the piston was cracked, that the babbitt came from the bearings between the connecting rod and the crank shaft.

The driver of the truck had stated that he had been using the truck daily, prior to the day the damage developed, and that it was all right that morning when he started out with it. He stated that he did not know what happened, that the motor got so it would not pull and had a knock; that he discovered the condition "out there by Shirley Yearns;" that *from there on* "I walked back and forth until I got the load off."

This testimony established the fact that the truck, apparently in good condition, suddenly quit pulling, developed a knock and, when the motor was inspected, it was found that the babbitt from the bearings between the connecting rod and the crank case was melted and the piston was cracked. The sole damage to the truck was shown as due to mechanical failure alone, no other explanation was offered, except the conclusion pleaded by plaintiff, to wit, pulling a heavy load over hilly, muddy roads. Therefore, it was not necessary for defendant to offer evidence tending to prove that the cause of the damage was excluded from the coverage provided. Plaintiff did that.

The conclusion reached herein is in harmony with the conclusion reached in Hemel v. State Farm Mutual Insurance Company, 25 So. 2d, 357. Policy there involved was virtually identical, in its terms, and provisions, with the one involved in the case at bar; and the facts were similar, except that in the Hemel case there was expert evidence to the effect that the damage was due to mechanical failure whereas we hold, in this case, that the facts proved establish that as the cause without the aid of expert opinion evidence. The record of the Court of Appeals, which court rendered that decision, was removed to the Supreme Court of Louisiana, by writ of certiorari and the Supreme Court also held that the loss was caused by a mechanical breakdown. Hemel v. State Farm Mutual Insurance Company, 29 So. 2d, 483, 1. c. 485.

In the case at bar, unlike the situation in the Hemel case, supra, no contention is made to the effect that the policy provisions are ambiguous; but the damage shown is quite similar in both cases.

The judgment is reversed. Boyer, C., concurs.

PER CURIAM:—The foregoing opinion of Sperry, C., is adopted as the opinion of the court. The judgment is reversed. All concur.