30 N.J. Super. 585 (1953)
105 A.2d 677
HERMAN PARKER, PLAINTIFF-RESPONDENT,
v.
NIAGARA FIRE INSURANCE CO., A CORPORATION OF THE STATE OF NEW YORK, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 7, 1953.
Decided December 28, 1953.
Before Judges JAYNE, FRANCIS and STANTON.
*586 Mr. Walter H. Jones argued the cause for appellant (Mr. Thomas J. Osborne, on the brief).
Mr. I. Irving Wittes argued the cause for respondent.
The opinion of the court was delivered by JAYNE, S.J.A.D.
The evidence adduced at the trial of this case before the judge of the Union County District Court leaves the fundamentally essential factual information to which the law is to be applied in a state of abysmal incertitude and obscurity. We shall explain.
The defendant issued to the plaintiff one of those relatively youthful types of automobile insurance policies which are offered to the motorists under the attractive and assuasive title of "Comprehensive Coverage." The insurer obligates itself in capital letters comprehensively to indemnify the insured for loss of or damage to the insured's automobile, except by collision or upset. The insurer's contractual obligation is expressed in the policy as follows:
"To pay for any direct and accidental loss of or damage to the automobile, hereinafter called loss, except loss caused by collision of the automobile with another object or by upset of the automobile or by collision of the automobile with a vehicle to which it is attached. Breakage of glass and loss caused by missiles, falling objects, fire, theft, explosion, earthquake, windstorm, hail, water, flood, vandalism, riot or civil commotion shall not be deemed loss caused by collision or upset."
But the policy is likewise capacious in that it embodies a variety of exclusions, notably the one of immediate pertinency which renders the so-called comprehensive coverage inapplicable:
"to any damage to the automobile which is due and confined to wear and tear, freezing, mechanical or electrical breakdown or failure, unless such damage is the result of other loss covered by this policy."
On the morning of March 12, 1952 the plaintiff endeavored to start the engine of his Buick automobile and it would not *587 operate. He summoned a mechanic from the Union County Buick Company, who was correspondingly unsuccessful in starting the motor, and the plaintiff's automobile was towed to the repair shop of the company. Upon disassembling the engine it was discovered that a dark brown substance had coated the insides of the cylinders causing a seizure of the pistons. "This substance or liquid had been circulated through the oil pump, through the gears and through the strainer. That was all in through there," the mechanic explained. The oil pump did not appear to be out of order and oddly there was an adequate supply of oil in the crankcase, in which there was no visible trace of the brown substance.
The mechanic testified that although he had seen many engine seizures in his experience of 25 years, he had never before observed one of comparable characteristics. Moreover the seizure did not occur precipitantly during the operation of the engine. Did it occur immediately upon the immobilization of the pistons? No one knows. The reason for the condition seems to have been mysterious and a curiosity to ascertain it was naturally inspired.
A specimen of four ounces of the oil remaining in the crankcase was delivered to Jersey Testing Laboratories of Newark to detect the suspected presence in it of sugar or molasses. The report reads:
"Examination was made of oily residue and bearings obtained from a damaged motor. No evidence of sugar, abrasives or any other foreign substance other than oil disintegration products was found.
Large amount of bearing metal particles present, indicate insufficient or deficient motor lubrication."
It was explained that the discovery in the oil of the particles of babbitt metal indicated the motor had become heated to the temperature at which this metal commonly used in the bearings melts and descends into the crankcase. The mechanic testified that there was no evidence of scoring upon the surface of the cylinder which would be anticipated in such an event.
*588 Perplexity continued at the trial when during its concluding moments the patient trial judge was heard to say, "Actually we don't know what happened. I guess that's about the size of it."
Thereafter a chemical engineer engaged in testing petroleum was interrogated.
"By the Court:
Q. What we want to know, Mr. Handt, is what theories you have, if any, as to what happened in this case. A. Well, I think my theory is similar to Mr. Rader's, but whether the oil is at fault or the engine is at fault, you can't say from what I've heard. That's my opinion. If the engine overheated, it would cause a good quality oil  it's likely it would cause a good quality oil to form these varnishes and resins. However, if you had a very poor quality oil in the engine and under normal running conditions that also may cause this engine to have varnishes and resins formed in the chambers.
Q. Would that be sufficient to cause this condition? A. I believe it would.

* * * * * * * *
Q. In normal operation of an engine, with sufficient oil, would the oil have coated in the manner testified in this case? A. I don't believe so.
Q. Isn't it a fact that the oil coating in this manner evidenced that there was a breakdown in the oil itself? A. Yes.

* * * * * * * *
Q. Have you ever known of a situation such as this one which had resulted from the use of poor oil? A. Frankly, no."
We should add that Mr. Rader, with whose opinion Mr. Handt was in general accord, testified that it was his belief that the dark brown substance was oil that had been scorched by frictional heat.
It seems to us that the predominant probability to be derived from the evidence is that the engine during its operation became abnormally heated due to the inadequacy of proper lubrication.
The direct cause of the inadequacy of lubrication is not made evident. May it be reasonably inferred from the evidence that the origin of the cause of the lack of requisite lubrication was accidental? There was a sufficient supply of oil in the crankcase. Was, then, its deficiency in distribution and circulation attributable to some perhaps temporary *589 mechanical defalcation? Was the oil of low quality? No examination of its viscosity and lubricative properties was made. As we remarked at the beginning of this opinion, the initiative cause of the engine seizure is in the evidence obscure and a subject of surmise and conjecture.
A judgment was granted in favor of the plaintiff awarding him damages in the sum of $325.12 and costs. This is represented to be a test case, hence the present appeal.
The decisions appertaining to the denominated comprehensive coverage automobile insurance policies have not yet become numerous. We cite as an informational contribution the following: Durback v. Fidelity & Guaranty Ins. Corp., 17 N.J. Super. 160 (Cty. Ct. 1951); Lunn v. Indiana Lumbermens Mutual Ins. Co., 184 Tenn. 584, 201 S.W.2d 978, 171 A.L.R. 259 (Sup. Ct. 1947); Hemel v. State Farm Mut. Auto. Ins. Co., 211 La. 95, 29 So.2d 483 (Sup. Ct. 1947); Atlas Assur. Co. v. Lies, 70 Ga. App. 162, 27 S.E.2d 791 (Ct. App. 1943); Kirkley v. Merrimack Mut. Fire Ins. Co., 232 N.C. 292, 59 S.E.2d 629 (Sup. Ct. 1950); Tonkin v. California Ins. Co., 294 N.Y. 326, 62 N.E.2d 215, 160 A.L.R. 944 (Ct. App. 1945); Terrien v. Pawtucket Mut. Fire Ins. Co., 96 N.H. 182, 71 A.2d 742 (Sup. Ct. 1950); Rich v. United Mut. Fire Ins. Co., 328 Mass. 133, 102 N.E.2d 431 (Sup. Jud. Ct. 1951); Roberts v. State Farm Mut. Auto Ins. Co., 240 Mo. App. 263, 203 S.W.2d 508 (K.C. Ct. App. 1947); Republic Cas. Co. v. Mayfield, 251 S.W.2d 764 (Texas Civ. App. 1952). Vide, also, 5 Appleman, Insurance Law and Practice 375, § 3222.
In some of the cited cases there was a definite identification of the proximate cause of the loss. In the Rich case, supra [328 Mass. 133, 102 N.E.2d 432], the court remarked: "The evidence leaves the cause of the impulse to the automobile a matter of speculation, conjecture, and surmise." In the Republic Cas. Co. case, supra [251 S.W.2d 765], the court commented: "We conclude that this testimony fails to meet the burden imposed upon appellee and raises no more than a surmise or speculation that at some time or other the break was caused by a blow or bump rather than by some *590 mechanical failure in the part itself." In the Roberts case, supra [240 Mo. App. 263, 203 S.W.2d 511], the testimony established the fact that the truck, apparently in good condition, "suddenly quit pulling, developed a knock and, when the motor was inspected, it was found that the babbitt from the bearings between the connecting rod and the crankcase was melted and the piston was cracked." It was held that the cause of the damage unexposed by the evidence was not comprehended by the insurance coverage.
If the argument on behalf of the plaintiff is whittled down, its core is found to be that if there is proof of the occurrence of damage to the automobile of the insured from a cause undisclosed by the evidence but not from collision or upset, the insured is entitled to recover the loss under the policy unless the insurer proves that the cause of the injury was excluded from the policy coverage. We are not in accord with that extraordinary contention. We are of the opinion that the primary burden rests upon the plaintiff to submit evidence which to a prima facie degree establishes that the loss was caused by a risk covered by the policy, namely, a direct and accidental loss. Cf. Durback v. Fidelity & Guaranty Ins. Corp., supra. Where at the conclusion of the trial, as in this instance, the evidence generates, at best, only a speculative probability with regard to the initial cause, and that probability, if respected, tends predominantly to disclose a cause for the injurious consequences against which the plaintiff is not insured under the terms of the policy, the plaintiff fails to sustain his alleged cause of action. Such was the posture of the proof in the present case.
Judgment is reversed, and the entry of a judgment for the defendant directed.