HOME SERVICE CASUALTY INSURANCE COMPANY, Appellant,

v.

H. D. BARRY, Appellee.

No. 3237.

Court of Civil Appeals of Texas.

Waco.

March 17, 1955.

Rehearing Denied April 7, 1955.

Irion, Cain, Bergman & Cocke, Dallas, for appellant.

Mixson, Haley & Bates, Waco, for appellee.

TIREY, Justice.

This action (non-jury) is grounded on the collision provisions in a policy of insurance covering a truck. The right rear dual wheels of plaintiff's truck came off while he was driving it down a slope of a roadway just before reaching a low water concrete bridge without bannisters. When the right rear wheels came off, the right rear end of the truck dropped to the ground and drug on the road and on across the concrete bridge and the truck was seriously damaged. Plaintiff specifically asked for damages to the truck in the amount of $1,600 under the collision provision of the policy, and specially sued for wrecker service in the sum of $75 and for $5 per day for the loss of the use of the truck, and $197 storage. The Company filed general denial and specifically answered to the effect that the facts did not constitute a collision with another object as contemplated by the policy, and further that the damages sustained were due to wear and tear or to a mechanical breakdown or failure, and also denied liability for the wrecker service and loss of the use of the truck.

The Statement of Facts shows certain stipulations of the parties; also the tender of testimony of witnesses and exhibits. We quote the stipulations pertinent here:

"4. That on April 22, 1954, at about 1:30 P.M., plaintiff was operating the above described G.M.C. truck at a point located about four miles east of Morgan in Bosque County, Texas. That the insured was hauling gravel on said truck and had a load of about five yards of gravel and was traveling in a westerly direction. That as plaintiff started down the banks of a dry creek to cross the bridge at the bottom of said dry creek, and while the plaintiff was traveling about twenty miles per hour, the plaintiff heard a noise and his truck became difficult to steer, and plaintiff had difficulty keeping the truck from running off the end of the bridge; that plaintiff attempted to apply his brakes, but they had no effect on the truck. That the right rear wheels of the truck came off of said truck and rolled into the creek, thereby causing the axle housing and brake drum on the right rear side of said truck to drop to the ground and drag on the ground and on across said concrete bridge, and said truck came to a stop on the opposite end of said bridge.

"5. That said truck did not strike any other vehicles or any other object

than the road and concrete bridge which were struck when the right rear wheels came off of said truck and before said truck could be brought to a stop, the right end of the rear axle housing and right rear brake drum of said truck drug on the ground and on across said concrete bridge.

"6. That the damage to the truck above mentioned by virtue of the occasion in question is the sum of $950.00."

The Court found in favor of plaintiff and awarded plaintiff the following damages: $900 damages to the truck; $75 wrecker service, and $197 storage charge, and decreed accordingly.

At the request of the insurer the Court filed findings of fact and conclusions of law. The Company seasonably filed exceptions to these original findings of fact and conclusions of law and asked the court to file amended and additional findings of fact and conclusions of law and this request was granted, and we quote the pertinent parts thereof:

"1. On April 22, 1954, plaintiff, H. D. Barry was the owner of a 1952 GMC dump truck.

"2. That on April 22, 1954 said GMC dump truck was covered by policy of Home Service Casualty Insurance Company covering the hazards of collision or upset, among other coverages; said collision or upset being $50.00 deductible collision or upset.

"3. That said insurance policy was a standard Texas form policy as approved by the Insurance Commission of the State of Texas.

"4. That on April 22, 1954, said GMC dump truck was in a collision with the roadbed in Bosque County, Texas.

"5. That on April 22, 1954, said GMC dump truck was in a collision with a concrete bridge or slab in Bosque County, Texas.

"6. Damage to said GMC dump truck as a result of said collision amounted to $950.00.

"7. That plaintiff, H. D. Barry, incurred a reasonable charge of $272.00 in protecting said GMC dump truck from any further loss following said collision on April 22, 1954.

"8. That said $272.00 was a reasonable expense.

"9. That said $272.00 expense incurred by H. D. Barry following said collision on April 22, 1954 was incurred at the request of Home Service Casualty Insurance Company.

"10. A. That H. D. Barry became personally liable for said sum of $272.00 for moving said truck from Bosque County to Waco, Texas where said truck was stored.

"B. That it was reasonably necessary to move said truck to Waco, Texas in order to protect the same.

"C. That C. H. (Clarence) Hunter was the duly authorized agent of the defendant on and after April 22, 1954.

"D. That H. D. Barry did not pay said sum of $272.00 but became personally liable therefor and personally owed said sum of $272.00 at the date of trial.

"11. That the insured, H. D. Barry, plaintiff complied with all the conditions and provisions of the above described insurance policy.

"12. That the damage to said truck of $950.00 was a direct result of a collision of said truck with the ground and with a concrete slab or bridge and that such damage was not caused by mechanical breakdown or failure.

"13. That the plaintiff, H. D. Barry, proved that the collision was not due to wear and tear or mechanical breakdown or failure.

"Conclusions of Law

"1. That a contract of insurance was in existence on April 22, 1954, issued by Home Service Casualty Insurance Company and insuring a GMC dump truck of H. D. Barry against the hazard of collision providing for $50.00 deductible coverage.

"2. Because of the collision suffered to said GMC truck on April 22, 1954, and the damages resulting from said collision, H. D. Barry, under said policy is entitled to recover damage from defendant, Home Service Casualty Insurance Company, in the amount of $900.00.

"3. That under the provisions of said insurance policy with reference to protection of said vehicle by the insured following a loss, H. D. Barry, plaintiff, is entitled to recover expenses in the sum of $272.00 from Home Service Casualty Insurance Company."

Appellant assails the judgment on what it designates as six points. Points 1 to 3 are substantially: The agreed facts do not show a collision with another object under the terms of the policy; that the evidence is insufficient to support the finding that there was a collision as that term is used and contemplated in the policy; that the evidence is insufficient to support the judgment because the appellee failed to discharge his burden of proof that the damage was not the result of wear and tear or mechanical breakdown or failure.

Appellee's reply to these contentions is to the effect that the facts agreed on constitute a collision with another object under the terms of the policy; the evidence is sufficient to support the finding that there was a collision as that term is used in the policy; and that appellee did discharge his burden of proving that the damage was not due and confined to wear and tear, freezing, or electrical or mechanical breakdown or failure.

Notwithstanding the stipulations heretofore quoted, testimony was tendered and a Statement of Facts accompanies the record. Under the foregoing conditions, the findings of fact are not conclusive. See Swanson v. Swanson, 148 Tex. 600, 228 S.W.2d 156, points 2 and 3. Testimony was tendered to the effect that the bed of the truck was torn up completely and that it was beyond repair; that the dump bed (which was loaded with five yards of gravel at the time of the accident) was holding on at one corner of the frame and the rear axle was broken and the housing and wheels were off of that; that there were no bannisters to the bridge and the only part of the bridge that the truck struck was the floor; that the truck was damaged totally beyond economical repair; that the truck was damaged to the extent that it would have been unsafe to bring it in with the bed on because of the danger of its slipping over to the side and hitting an oncoming car; that he picked up the rear end and tied the steering wheel and brought it in and that the front wheels were the only ones touching the ground; that the bed was torn loose from the truck, except where it was attached to the corner of the frame on the right side and at the end nearest the cab; that the axle housing of the truck was broken off; that there was a small dent in the cab, outside of that the cab seemed to be in good shape; that the bed was torn up, the hydraulic lift was torn out from under it and one sideboard was torn off and the "whole thing is knocked out of line."

"Q. Now where were the sideboards torn off? A. These were torn off when I was trying to get the truck up.

"Q. You tore this off getting it up? A. I tore this when I was turning it over. I had to turn the truck back over. . .

"Q. But they were not torn off by the accident that took place out there? A. I don't know. They were cracked up. They wouldn't stay on there when they were on. * * * . .

"Q. All the pictures do correctly reflect what they purport to show? A. Except that one side. The axle

housing is cracked and broke off where it's buried in the dirt there.

"Q. Do you mean that axle housing is actually broken loose? A. It's split and chipped off. If it wasn't for that you could put another axle in there and the housing would be good."

Ten separate kodak pictures were tendered in evidence as to the position the truck was in after the accident. Picture C shows the dump bed overturned to the extent that substantially all of the gravel that it was carrying appears to have been emptied out. Pictures D, E and I show the dump bed thrown entirely loose from the left side of the chassis of the truck at a severe angle, the right side of the dump bed appearing to be on the ground.

We quote the pertinent provisions of the policy as to coverage and exceptions:

"Coverage D—Comprehensive Loss of or Damage to the Automobile, Except by Collision or Upset

"To pay for any direct and accidental loss of or damage to the automobile, hereinafter called loss, except loss caused by collision of the automobile with another object or by upset of the automobile or by collision of the automobile with a vehicle to which it is attached. Breakage of glass and loss caused by missiles, falling objects, fire, theft, explosion, earthquake, windstorm, hail, water, flood, vandalism, riot or civil commotion shall not be deemed loss caused by collision or upset.

"Coverage E–1—Collision or Upset

"To pay for direct and accidental loss of or damage to the automobile, hereinafter called loss, caused by collision of the automobile with another object or by upset of the automobile, but, only for the amount of each such loss in excess of the deductible amount, if any, stated in the declarations as applicable hereto.

"Coverage E–2—Convertible Collision or Upset

"To pay for direct and accidental loss of or damage to the automobile, hereinafter called loss, caused by collision of the automobile with another object or by upset of the automobile. Upon the occurrence of the first loss for which payment is sought hereunder the insured shall pay to the company the additional payment stated in the declaration. Loss caused by collision or upset occurring prior to the first loss for which payment is sought hereunder is not covered."

Exception "(j) under coverages D, E–1, E–2, F, G–1, G–2, H, I and J, to any damage to the automobile which is due and confined to wear and tear, freezing, mechanical or electrical breakdown or failure, unless such damage is the result of other loss covered by this policy."

■■ Bearing in mind the rule that exceptions and words of limitation will be strictly construed against the insurer and that it is the duty of the court not to write a limitation of liability into a policy where none exists, Providence Washington Insurance Co. v. Proffitt, 150 Tex. 207, 239 S.W.2d 379, the question here presented to us is: Under the findings of fact and all of the circumstances tendered by the testimony, did the trial judge have the right to infer reasonably that the damage to the truck was not confined to wear and tear, and that such damage was due to an upset under the provisions of the policy? We think he did.

Under the record here made, the truck was traveling down hill at some 20 miles per hour and was loaded with approximately five yards of gravel; that when the rear right wheels came off and the right rear end of the truck struck the roadbed, we think the trial court could reasonably assume that the weight of the gravel in the dump bed, as well as the speed of the truck and the down grade, contributed to the

force with which the bed of the truck struck the roadbed. The record does not give the exact distance that the truck moved from the time the wheels came off until the dump bed became upset and emptied substantially all of the gravel in the bed out on the side of the road, but it struck with sufficient force that it tore such fastenings that the dump bed had from the left side of the chassis of the truck and as we understand the testimony, it was barely holding on by one fastening to the front right side of the chassis. As we view the pictures, there is no doubt about there being an upset of the truck to the extent of the dump bed because one witness said the truck had to be turned over in order for it to be righted. We believe the foregoing factual situation distinguishes this case from the decision of our Supreme Court in Republic Casualty Co. v. Mayfield, Tex. Civ.App., 251 S.W.2d 764, and the cases there cited. It seems to us that since the policy does cover an upset, and since the dump truck was loaded, the trial court could reasonably infer that the upset was due to the load of the truck and the speed of the truck and the down grade, and that these three elements would necessarily contribute to the force with which the dump bed was thrown from its natural position against the bed of the road and constitute a new and intervening cause. As we view the provisions of the policy, Exception (j) does not exclude such upset and resulting damages. Nor do we think our views here are in conflict with the rule announced by the Supreme Court of Tennessee in Lunn v. Indiana Lumbermens Mutual Ins. Co., 184 Tenn. 584, 201 S.W.2d 978, point at page 980, 171 A.L.R. 259. In that case Exception (d), under consideration, is substantially the same as Exception (j) in the policy before us. In discussing this exception the Court said: "The insurer insists that the expression 'confined to' means that the exclusion 'will not apply to any damage done to the car by reason of an intervening cause', but will apply to any damage done to any part of the automobile solely by reason of the mechanical breakdown. We think this is the construction which must

be placed upon the expression 'confined to' as used in this contract. It is clear that the insurer was attempting to avoid liability for any damage to the automobile caused solely by mechanical defects but to remain liable for any damage thereto brought about by an intervening cause, and in order to effectively so limit the exclusion it added the expression 'confined to' immediately after the words 'any damage to the automobile which is due' etc." We think the foregoing construction is applicable to the factual situation here and because it is applicable we think that appellee has carried his burden and is entitled to recover. Needless to say that such view is in accord with the decision of the Supreme Court of Louisiana in Albritton v. Fireman's Fund Insurance Co., 224 La. 522, 70 So.2d 111; see also Hemel v. State Farm Mutual Auto Ins. Co., 1947, 211 La. 95, 29 So.2d 483. We think our view here is also in harmony with the Supreme Court of Connecticut in Fogarty v. Fidelity & Casualty Co., 120 Conn. 296, 180 A. 458, 460. Here we find the following statement of the rule:

"Any insurance policy is a contract and the intention of the parties as manifested in it is determinative of the risks it covers. Where the coverage is based upon loss due to a certain cause, the principles which in legal concept determine causation will ordinarily be applied in carrying out the intention of the parties. But the situation is not entirely like that present in cases of torts and the like. A person taking out insurance bargains for a certain protection, and for a consideration the insurer agrees to furnish that protection. The usual principles of causation should not be so closely applied as to defeat the intent of the parties. Justice Story, in Peters v. Warren Ins. Co., 14 Pet. 99, 39 U.S. 99, 110, 10 L.Ed. 371, after reviewing a number of cases, states: 'Illustrations of this sort might be pursued much further, but it seems unnecessary. Those which have been already

suggested sufficiently establish that the maxim, causa proxima non remota spectatur, is not without limitations; and has never been applied, in matters of insurance, to the extent contended for; but that it has been constantly qualified and constantly applied only in a modified practical sense, to the perils insured against.' "

It follows from the views here expressed that none of appellant's points present reversible error, and that each should be overruled. Accordingly, the judgment of the trial court is affirmed.