STURGIS, Chief Judge
(dissenting).
While the quoted exclusionary clause has not been construed in this jurisdiction in the light of facts comparable with those in suit, there is respectable authority of other jurisdictions which, in my opinion, compels the conclusion that the trial court erred in holding that the exclusionary clause operated to relieve the insurer from liability for the damage to the defective thermostat on the car, but did not relieve it of liability *224 for damages to the motor, the usefulness of which was completely destroyed by a chain of events precipitated by the mechanical failure of the thermostat. The hitch in that conclusion' develops from the concept that the damage to the interior of the motor was produced by fire — by some sort of burning process which, though traceable for cause to the mechanical failure of the thermostat, somewhere and somehow along the normal road between cause and effect, lost the “cause” and thereafter traveled somewhat taillessly on "effect” to reach an independent element of fire or heat within the engine. The conclusion is illogical.
The leading case construing the subject exclusionary clause is Lunn v. Indiana Lumbermens Mut. Ins. Co., 184 Tenn. 584, 201 S.W.2d 978 (1947) 171 A.L.R. 259. The Tennessee Supreme Court reversed a judgment in favor of Lunn in an action involving the identical policy provisions with which we are concerned. The agreed facts were:
“Plaintiff was driving his automobile to Nashville on Highway 41-W. The hood of the car was so built that same raised from the front of the car and when lifted up, came back and the entire hood would swing on hinges near the windshield and when fastened down the hood was fastened by a latch at the front end of the car.
“If the plaintiff introduced proof it would be proved that the hood became unfastened by reason of the latch breaking and the hood as a result of becoming unfastened was thrown up and back against the front of the car, causing damage in the amount of $78.-50.
“It is agreed that the latch had on a previous occasion been broken and had been welded. It is also agreed that the wind caused by the moving of the automobile caused the hood to be thrown up and back after the latch was broken.”
The insurer insisted that the exclusionary clause relieved it of liability for the mentioned damages. Sustaining that contention, the court said:
“It must be recognized at the outset that the insurer is liable under the comprehensive clause of the contract unless the facts which occasioned the accident and its consequent damage come within this exclusion clause. This necessitates a construction of that clause. The language thereof material here is ‘this policy does not apply to any damage to the automobile which is due and confined to — mechanical breakdown’. It is clear that the breaking of the defective latch was a mechanical breakdown.
“However, the litigants disagree as to the meaning of the expression ‘confined to’ as used in this clause and the true meaning of this expression as used in this clause is very material to the issue of whether the insurance company is liable under this contract. The insured insists that the expression is meant to ‘restrict the exclusion to the actual part which broke’. That is, that the insurer is by this expression only relieved from payment for repair of the defective part, but continues to be obligated to pay for the damage done to any other part of the automobile by the breaking of the defective part. This exclusion clause expressly states that ‘this policy does not apply under any of the coverages to any damage to the aiitomobile which is due and confined to’, etc. (The italics are ours.) We must give the generally accepted meaning to the expression ‘any damage to the automobile’. In doing so, we are forced to the conclusion that the expression ‘confined to’ cannot be given this construction insisted upon by the insured without doing violence to the other pointed out language of the sentence. The insurer insists that the expression ‘confined to’ means that the exclusion ‘will not apply to any damage *225 done to the car by reason of an intervening cause’, but will apply to any damage done to any part of the automobile solely by reason of the mechanical breakdown. We think this is the construction which must be placed upon the expression 'confined to’ as used in this contract. It is clear that the insurer was attempting to avoid liability for any damage * * * thereto brought about by an intervening cause, and in order to effectively so limit the exclusion it added the expression ‘confined to’ immediately after the words ‘any damage to the automobile which is due’ etc. We are unable to give any other meaning to this expression consistent with the meaning of the other language of the clause in question and the risk which it is apparent the insurer was seeking to avoid.
“When a claim for damages is grounded on the insurance contract, as in this ease, the liability of the insurance company depends, of course, upon whether the damages sustained ‘were the result of a risk or hazard against which the insured was covered by the policy’, rather than upon the question of proximate cause of the accident. Colley v. Pearl Assurance Company, 184 Tenn. 11, 195 S.W.2d 15, 16. However, as hereinabove determined, this contract excludes the insurer from liability for any damage caused solely by a mechanical defect. In order, therefore, to determine whether the insurer is liable for the damage sued for in this case, it is necessary to determine whether under the facts the mechanical defect in this case (the broken latch) was the sole proximate cause of the accident and the consequent damage. If it was the sole proximate cause, then the insurer is not liable. If it was not the sole proximate cause, then the insurance company is liable under the comprehensive clause.
“ * * * The insurer insists that the breaking of the latch was the sole cause of this accident and damage. On the other hand, the insured insists that ‘the breaking of the latch did not cause the damage, but it was the wind from the forward motion of the automobile, which catching under and throwing up and back the hood caused the damage’. It is stipulated ‘that the wind caused by the moving of the automobile caused the hood to be thrown up and back after the latch was broken’. This stipulation amounted to nothing more than the statement of the commonly known physical law that the moving of an automobile along the highway creates a resistance thereto by the air through which it, of course, moved and that this resistance increases as the speed of the automobile increases. It is clear beyond controversy that the accident would not have occurred if the latch which held down the hood had not broken. It follows, of course, that this mechanical breakdown was a proximate cause of the accident but the question remains as to whether it was the sole proximate cause.
“The breaking of this latch made effective an existing physical law which otherwise was totally ineffective upon the hood of this car, but we do not think that the effect of this existing physical law was a proximate cause of this accident. It was only the breaking of the latch that made applicable the existing physical law in question. If, instead of the latch breaking, the wheel of this automobile had suddenly rolled off the axle, that automobile in necessary obedience to the physical law of gravity would have immediately fallen violently to the surface of the highway. However, it could not be said that the law of gravity was the proximate cause of the accident. The sole cause of the accident would have been the dropping off of the wheel. So, in the instant case, the pressure against the hood of *226 the automobile in response to a physical law as certain as the law of gravity was not a proximate cause of the hood being blown up. The breaking of the latch intended to prevent such an occurrence was the proximate cause of the hood being removed from the position in which the latch held it.
“ * * * The procuring, efficient and predominant cause of this accident was solely the breaking of the latch. 29 American Jurisprudence, 689, 690, Section 902, defines proximate cause as ‘the proximate cause is the efficient cause— the one that sets others in motion — to which the loss is to be attributed, although other and incidental causes may be nearer in time to the result and operate more immediately in producing the loss’. In the case of Great Eastern Casualty Company v. Solinsky, 150 Tenn. 206, 212, 263 S.W. 71, 72, 35 A.L. R. 1007, this court quoted approvingly from a California case, Moblad v. Western Indemnity Co., 53 Cal.App. 683, 200 P. 750, viz.: ‘In the instant case, the damage to plaintiff’s car was caused proximately by its turning over on the edge of the road. Its subsequent revolutions and consequent damage were but the operation of physical laws set in motion when it turned over on the edge of the road.’
“So, in the instant case the blowing up of the hood and consequent damage to this automobile was but the operation of a physical law made effective upon this automobile by the breaking of the latch, which mechanical breakdown was the sole proximate cause of the accident and its consequent damage. This being true, the damage sued for comes within the exclusion clause of the contract and the insurer is, therefore, not liable unless the final insistence of the insured is well taken.”
In Terrien v. Pawtucket Mut. Fire Ins. Co., 96 N.H. 182, 71 A.2d 742 (1950), the court observed:
“In Lunn v. Indiana Lumbermens Mutual Ins. Co., 184 Tenn. 584, 201 S. W.2d 978, 171 A.L.R. 259, the language of an identical exclusion was held limited to damage caused ‘solely’ by a mechanical breakdown. The interpretation there given placed no reliance upon the concluding qualification of the exclusion, but emphasized the use of the words ‘any damage’ in conjunction with the words ‘confined to.’ The interpretation there adopted would here produce the same result which we reach because of the limitation contained in the concluding clause. In that case the damages suffered resulted from the breaking of a catch on the hood of an automobile, permitting the hood to fly back against the vehicle. The hood as as a cause of damage was activated by natural forces set in motion by the mechanical breakdown, an excluded risk. Accordingly mechanical breakdown was held the sole cause of the loss. Here the mechanical breakdown was itself produced by natural forces set in motion by the bumps in the road which constituted an insured risk. The loss occasioned by the insured risk was magnified by the concurring mechanical breakdown, but did not originate with it, and was not due solely to it. Thus although reached upon somewhat different grounds, our conclusions do not conflict with those of the Lunn case.”
In Parker v. Niagara Fire Ins. Co., 30 N.J.Super. 585, 105 A.2d 677 (1953), the insurer issued to the plaintiff what the court correctly described as “one of those relatively youthful types of automobile insurance policies which are offered to the motorists under the attractive and assua-sive title of ‘Comprehensive Coverage,’ ” obligating itself to indemnify the insured for loss of or damage to his automobile, except by collision or upset, and expressing the obligation as follows:
“To pay for any direct and accidental loss of or damage to the auto *227 mobile hereinafter called loss, except loss caused by collision of the automobile with another object or by upset of the automobile or by collision of the automobile with a vehicle to which it is attached. Breakage of glass and loss caused by missiles, falling objects, fire, theft, explosion, earthquake, windstorm, hail, water, flood, vandalism, riot or civil commotion shall not be deemed loss caused by collision or upset.”
The policy also contained sundry provisions rendering the comprehensive coverage inapplicable in certain particulars, including the following:
“to any damage to the automobile which is due and confined to wear and tear, freezing, mechanical or electrical breakdown or failure, unless such damage is the result of other loss covered by this policy.”
One morning Parker was unable to start the engine of his automobile. He summoned a mechanic who disassembled it and found inside the cylinders a dark brown substance which caused a seizure of the pistons. He then brought suit on the policy and recovered judgment for the damage to the motor thus found to exist. The insurer appealed. The appellate court observed that there was testimony that bits of babbitt metal were found in the oil, which indicated the motor had become heated to the temperature at which this metal, commonly used in the bearings, melts and descends into the crankcase. Commenting generally on the evidence, the New Jersey court observed that “the predominant probability to be derived from the evidence is that the engine during its operation became abnormally heated due to the inadequacy of proper lubrication,” and elsewhere said that the evidence adduced at the trial “leaves the fundamentally essential factual information to which the law is to be applied in a state of abysmal incertitude and obscurity.”
In reversing the judgment, the New Jersey court rejected the contention of the insured that where there is proof of the occurrence of damage from an undisclosed cause but not from collision or upset (the general exclusion), the insured is entitled to recover unless the insurer proves that the cause of the injury was excluded from the policy coverage. The court also held that “the primary burden rests upon the plaintiff to submit evidence which to a prima facie degree establishes that the loss was caused by a risk covered by the policy,” and on this premise found that the evidence at best generated only a speculative probability with regard to the essential cause for the injurious consequences and that the plaintiff was therefore not entitled to recover. The evidence in the case now on review fully sustains the conclusion that the thermostat on appellee’s automobile failed mechanically, and it is no less compelling to the effect that the damage to the interior of the motor stemmed directly and exclusively from that failure. In my opinion the exclusionary clause operates to defeat appellee’s claim to coverage under the policy.
In Farmers Mutual Hail Ins. Co. of Iowa v. Stansbury, 291 S.W.2d 347 (Tex.Civ.App.1956), there was a judgment for plaintiff in an action on a standard form automobile insurance policy giving “comprehensive coverage” on a trailer and containing the identical exclusionary clause here involved. In that case a trailer wheel came off its axle solely as the result of mechanical breakdown or failure, and the wheel and trailer then came together in such manner that the wheel entered the trailer and caused extensive damage to the interior. In holding that the insurance company was not liable for the policyholder’s loss, the court said:
“In view of the weight of authority upon the question posed, we are of the opinion that where no peril insured against has come into play causing or contributing to cause the breakdown or failure which in turn causes or contributes to a resultant loss; — or where the breakdown or failure is not followed or accompanied by the coming into play of a peril insured against which in turn *228 causes or contributes to a resultant loss; — the loss and damage resulting from the breakdown or failure is not covered by the policy.
“This is true despite the provision in the ‘exclusion’ that the only damage excluded is that ‘due and confined’ to mechanical breakdown or failure. In an authoritative holding, already once followed by this court, it was held in effect that no protection was afforded under ‘comprehensive’ coverage where the chain of events resulting in loss stemmed solely from a mechanical failure or breakdown. By reason of the action of an intervening cause not insured against (in such case the natural force of the wind under an automobile hood when the vehicle was in motion), the loss and damage was occasioned. Since the proximate cause of the loss was the mechanical failure or breakdown, same not being caused by any hazard insured against, the loss was held without the scope of insurance afforded by the policy. In such case the question of ‘due and confined’ was resolved against the contention that damage due to mechanical failure and not confined to the part or parts so failing should be considered as covered. Lunn v. Indiana Lumbermens Mut. Ins. Co., 1947, 184 Tenn. 584, 201 S.W.2d 978, 171 A.L.R. 259, cited in Republic Cas. Co. v. Mayfield, Tex.Civ.App. Fort Worth, 1952, 251 S.W.2d 764.
“See also Blashfield’s Cyc Auto Law, Secs. 3691-3695; 5 Am.Jur., ‘Automobiles’, sec. 510.5 (new text in p. p.) ‘Comprehensive policies’, analyzing the case of Lunn v. Indiana Lumbermens Mut. Ins. Co., supra; Annotation in 23 A.L.R.2d 389; Boenzle v. United States Fidelity & Guaranty Co., Mo.App., St. Louis, 1953, 258 S.W.2d 938; Terrien v. Pawtucket Mut. Fire Ins. Co., 1950, 96 N.H. 182, 71 A.2d 742; United States Ins. Co. of Waco v. Boyer, 1954, 153 Tex. 415, 269 S.W.2d 340; Farmers Insurance Exchange v. Wallace, Tex. Civ.App. Fort Worth, 1955, 275 S.W.2d 864, writ ref., n. r. e.; Home Service Casualty Insurance Company v. Barry, Tex.Civ.App. Waco 1955, 277 S.W.2d 280, writ ref., n. r. e.”
I think the cited authorities establish the correct rule of construction.
It is interesting to note that the majority opinion fails to cite a single case in this or any other jurisdiction supporting the conclusion reached on this appeal. That, in itself, is of little consequence. However, where as in this case the effect of the decision is to produce a rule applicable only in this jurisdiction and totally out of balance with the otherwise uniform case law of our sister states, the dissonance should be fortified by practical and logical considerations clearly expressed. Aside from the fact, as our sister states have concluded, that there is no ambiguity or overreaching in the insurance provision here construed, with which conclusion I am in complete agreement, I would suggest that the decision of the majority completely overlooks the adverse economic impact that will necessarily result to the insurance business in this state, as it affects both the insurer and the insured; and has also apparently overlooked the fact that the principle of law here established will doubtless open a Pandora’s box of fraudulent claims. It will be all too simple for a designing claimant to produce a similar or identical end effect upon various parts of a motor vehicle by causing a mechanical breakdown to a lesser part, such as a thennostat as here involved or a latch holding down the hood as involved in the Lunn case. The net result of these factors will necessarily be an increase in premiums for comprehensive coverage or a complete elimination of this beneficial type of coverage from the insurance contract.
I therefore dissent.