which he is removable only for cause and after trial * * * the court may reverse or affirm, in whole or in part, such * * * findings or determination, suspension, dismissal, retirement, or reduction in rank reviewed."

Now, under the ordinance the director of public safety could have lawfully suspended the prosecutor for a period not to exceed six months, without pay, or fined him one month's pay. At the time the sentence by the director was imposed, the prosecutor had been suspended without pay for a period slightly exceeding four months. It is apparent that the intention of the director was to place a fine on prosecutor of loss of one month's pay, in addition to the period which had elapsed, and we think that the due administration of justice requires that the intended sentence should now be imposed.

In *Dubelbeiss* v. *West Hoboken*, 82 *N. J. L.* 683 (a somewhat similar case), the Court of Errors and Appeals, after referring to the above-quoted section of the *Certiorari* act, held that in consonance with the practice long adopted by the Court of King's Bench and approved by the Court of Errors and Appeals, the Supreme Court may not only order a reversal of the judgment of an inferior tribunal, but may enter such new judgment in that court as it appears by the record that the tribunal below ought to have rendered.

In accordance with these principles, the sentence in the present case will be modified to a fine of one month's pay.

No costs will be allowed either party as against the other.

WASHINGTON THEATRE COMPANY, INCORPORATED, PLAINTIFF-APPELLEE, v. HARTFORD ACCIDENT AND INDEMNITY COMPANY, DEFENDANT-APPELLANT.

Decided November 24, 1931.

For the plaintiff-appellee, *Lipman & Lipman.*

The judgment appealed from is in favor of the plaintiff below, the cause being heard without a jury by Judge Aaron A. Melniker, who filed the following opinion:

"This action was brought to recover from the defendant the expenses which the plaintiff incurred in defending itself in a law suit which it claims the insurance company should have defended.

"On October 21st, 1930, the defendant issued to the plaintiff a policy of insurance in which the defendant agreed—

" 'To pay any loss by liability imposed by law upon the assured for bodily injuries * * * accidentally sustained * * * by any person not employed by the assured, caused by

" '(a) The ownership, care, maintenance, occupation or use of the premises described in the declarations, or

" '(b) By any business operations disclosed in the declarations, conducted by the assured on the premises either while such person is within or upon the premises of the assured * * *.'

" 'To defend * * * any suit alleging such bodily injury * * *.'

"The 'premises' and 'business operations' referred to in the 'declarations' consist of a building at No. 976 Broadway, Bayonne, New Jersey, used and occupied by the plaintiff and in which plaintiff conducted a theatre.

"On January 30th, 1931, and while the policy was in force, suit was instituted by one Catherine Manno against the Washington Theatre Company, Incorporated, the present plaintiff, in tort for damages for negligence, it being alleged that the theatre company had failed to use proper care to protect said Catherine Manno while she was a patron in the

theatre from asault by another patron who it was alleged was 'boisterously intoxicated,' was 'noisy, annoying and obnoxious' and 'whose conduct constituted a nuisance' and that the theatre company failed in its duty to 'exercise proper care to make its premises reasonably safe for the patrons thereof' and 'to protect patrons from the violence and assault of other patrons,' and that because of such failure, said Catherine Manno was assaulted and suffered injury and damage.

"The theatre company referred the papers in the Manno suit to the defendant insurance company which promptly disclaimed liability. The theatre company thereupon retained its own counsel and successfully defended the suit. It then made a claim against the defendant insurance company for reimbursement of the expenses incurred in such defense. The defendant refused to pay and this suit was thereupon instituted to recover such expenses, amounting to $160. There is no dispute as to the reasonableness of the charge.

"The question of liability in this case turns upon the meaning of the words 'bodily injury accidentally sustained' as used in the policy of insurance upon which this action is based.

"The insurance company denies liability on the ground that the suit against the plaintiff was not for bodily injuries 'accidentally sustained' and therefore not the sort of a claim the insurance company was liable for under its policy and that it was, therefore, under no obligation to defend such suit.

"The plaintiff insists that the action was one for negligence and, therefore, one which the defendant had undertaken to protect the plaintiff against. Which contention is correct depends upon the meaning of the word 'accidentally' as used in the policy. In construing the policy, it must, of course, be borne in mind that in case of doubt, that construction much be adopted which favors the insured. *Weiss* v. *Union Indemnity Co.,* 107 *N. J. L.* 348.

"The question presented seems to be a novel one for the diligent search of counsel and the court for precedent and authority both in this state and elsewhere have been fruitless. Counsel for the plaintiff cites many cases in which it was decided that injury or death resulting from an unprovoked

assault was 'accidental' within the meaning of accident policies insuring the victim of the assault against injury or death due to accident. *Richards* v. *Travelers Insurance Co.,* 89 *Cal.* 170; *Lovelace* v. *Travelers Protective Association,* 126 *Mo.* 104. But these cases are not exactly analogous.

"There would seem to be little doubt that an unprovoked assault upon such an assured, resulting in injury or death, would be, certainly in so far as the assured was concerned, an 'accident' within the meaning of these policies. A person insured against accidental injury is just as much 'accidentally' injured if he should be unexpectedly and without provocation assautled on the public street as he would be if an automobile ran him down as he was crossing the street.

"And so in cases arising under 'Workmen's Compensation acts' where workmen have been assaulted during working hours and at their places of employment, it has been held quite uniformly that injuries resulting from such assaults were compensable. *John H. Kaiser Lumber Co.* v. *Industrial Commission,* 181 *Wis.* 513; *Stasmas* v. *Industrial Commission,* 80 *Okla.* 221; *Weekes* v. *William Stead, Ltd.,* 6 *N. C. C. A.* 1019.

"These cases are obviously distinguishable from the case *sub judice* in which an insurance company issued what is known as a 'public liability' policy in which it agreed to pay any loss imposed by law upon the assured for bodily injuries 'accidentally' sustained by another. Is an injury sustained in an assault upon such other person 'accidentally' sustained within the meaning of the language of the policy?

"It is quite clear that the word 'accidentally' is used here not in its primary sense as a purely fortuitous happening—the kind of an event which cannot and does not give rise to any cause of action. The plaintiff would hardly be willing to pay for insurance against liability arising from such happening as there would be no liability in such case. Obviously, therefore, it is not against purely accidental injuries that the plaintiff insured itself, for it would not be liable for such accidents in any event. It is equally clear that the defendant would not and did not intend to insure the plaintiff against

liability for willful injury inflicted by the plaintiff upon another. It seems to follow, therefore, that what the policy was intended to cover was the class of cases between these two extremes, namely, cases involving injuries due to or caused by the negligence of the insured.

"Was the Manno action predicated upon such a happening? The state of demand alleges the duty of the plaintiff as an operator of a theatre to use reasonable care to protect its patrons against injury and negligent breach of such duty. This is not necessarily conclusive but it cannot be denied that such allegation constitutes a cause of action based on negligence. It is the duty of the operator of a theatre or other place of public amusement to use reasonable care not only to make the premises in which said business is conducted physically safe, but also to use reasonable care to protect its patrons from assault by its own employes or by other patrons. 26 *R. C. L.* 718. Of course, this duty is not an absolute duty. It is only a duty to exercise reasonable care. A theatre operator is no insurer. He is not obliged absolutely and under all circumstances to protect his patrons against assault. Circumstances can readily be imagined in which no reasonable vigilance or reasonable effort on the part of the proprietor could prevent an assault, but surely it will not be disputed that if the proprietor permits an intoxicated and disorderly person to enter a theatre and assault an innocent and inoffensive patrons in the presence of the proprietor or of an usher who makes no effort to intervene to prevent such assault, that the theatre proprietor would be liable, and the liability would be predicated not upon the assault but upon the negilgence or lack of reasonable care on the part of the proprietor or his servants in failing to protect the victim of the assault. The injuries sustained would be the result of negligence and in so far as the victim is concerned, such injuries would be accidentally sustained, just as much as though the patron had fallen from a defective seat or through a defective trap door.

"The Manno action against the plaintiff, therefore, being based on negligence was one within the contemplation of the

contract of insurance, on which the defendant was bound to defend in plaintiff's behalf and for its failure to do so it is liable in damages to the plaintiff for the expense plaintiff incurred in defending itself. *Hill Co.* v. *Georgia Casualty Co.,* 158 *Tenn.* 194; *Travelers Insurance Co.* v. *Henderson,* 120 *Ky.* 218.

"There will be judgment for the plaintiff for $160."

Before Justices CAMPBELL, LLOYD and BODINE.

For the appellant, *G. Earl Brugler* and *Victor C. Hansen.*

For the appellee, *Benjamin Nessenbaum.*

PER CURIAM.

The judgment under review is affirmed for the reasons expressed in the opinion of Judge Melniker in the court below.

THE BOROUGH OF BRADLEY BEACH, A MUNICIPAL COR-
PORATION, ETC.. PROSECUTOR, v. BOARD OF PUBLIC
UTILITY COMMISSIONERS OF THE STATE OF NEW
JERSEY ET AL., DEFENDANTS.

Decided November 25, 1931.

For the rule, *Joseph R. Megill.*

*Contra, William E. Foster* and *Walter L. McDermott.*