24 N.J. Super. 289 (1953)
94 A.2d 345
JOHN L. McALLISTER, PLAINTIFF-RESPONDENT,
v.
THE CENTURY INDEMNITY COMPANY OF HARTFORD, CONN., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 8, 1952.
Decided January 8, 1953.
*291 Before Judges McGEEHAN, BIGELOW and JAYNE.
Mr. Paul C. Kemeny argued the cause for the respondent.
Mr. Morris Spritzer argued the cause for the appellant (Mr. John A. Lynch, attorney).
The opinion of the court was delivered by BIGELOW, J.A.D.
The question is whether a liability insurance policy issued by the defendant-appellant to the plaintiff-respondent covered a certain loss.
Plaintiff, who was an excavator, completed on June 10, 1950 the installation of an oil tank under the sidewalk in front of the building at Hudson Street and Roosevelt Avenue in Carteret, N.J. A suit for damages was instituted against the plaintiff by a third person, based on an accident resulting  or so it was alleged  from the plaintiff's negligence in failing to protect properly by barrier or otherwise, a depression that remained after the completion of the work, or that was occasioned by the sinking earth or cinders with which plaintiff had covered the tank. The accident occurred one month after plaintiff had completed his work. The insurance company refused to defend the suit, so the plaintiff himself defended, won the judgment, and brings the present action to recover the amount he had paid for counsel fees.
The printed policy form was evidently not intended for use in reference to the kind of business in which plaintiff was engaged. Yet the defendant company employed it for the purpose, with the result that the policy issued to plaintiff is most ambiguous.
The form provides space for insurance in respect to any of six different classes or divisions of hazards. The particular policy held by plaintiff insures up to certain amounts for "Division 1  Premises and Operations." The amount of insurance for the other divisions is "nil." So plaintiff, if covered at all, must claim under Division 1. Beneath the schedule of the six Divisions comes what is called "Coverage *292 Analysis  Purposes of Use." And under the heading, "1. Premises-Operations" the following is typewritten:
"Excavation  For cellars or foundations of buildings  bridges or retaining walls and mass rock excavation in connection with dams (excavation in connection with street or road construction of tunneling to be separately rated)."
On the second page of the policy, under "Definition of Hazards," is printed:
"Division 1. Premises-Operations. The ownership, maintenance or use of the premises, and all operations during the Policy Period which are necessary or incidental thereto; including accidents (except accidents due to misdelivery) which occur after completion or abandonment of operations arising out of pick-up or delivery operations or the existence of tools, uninstalled equipment and abandoned or unused materials."
The policy shows the "Location of premises .... 619 Elizabeth Street, Perth Amboy, New Jersey & elsewhere in the State of New Jersey," and that the insured's interest in the premises is "tenant." The plaintiff was not tenant of the premises where the accident occurred and had no interest therein. But the company admits that the word "tenant" as a description of insured's interest in the premises in respect to which coverage is afforded, must be disregarded.
The defendant does not assert that the excavation for the tank was not an excavation for a cellar or foundation within the meaning of the coverage analysis.
The phrase in the definition of hazards, "operations * * * which are necessary or incidental thereto," is hard to harmonize with the rest of the policy. We would expect that the use of the premises must be incidental to the work of excavation, rather than the excavation be incidental to the use. We find that the policy covers all excavating operations at the premises during the policy period, regardless of the phrase, and again both parties tacitly agree.
It is the defendant's contention that the policy does not cover liability for the accident in question, since the *293 accident happened after the plaintiff had completed his work on the tank job, even though it occurred within the policy period, that is, the year ended April 12, 1951. The company urges that the last clause in the definition of hazards, Division 1, relieves it of liability, by application of the maxim expressio unius exclusio alterius. The clause expressly extends the coverage to a limited group of accidents which may occur after the completion of operations, and thereby  so the company argues  excludes liability for accidents outside that group, and occurring after completion of operations. The maxim, while most commonly employed as an aid in the interpretation of statutes, is also used occasionally on problems of contract construction, e.g., Oliver v. Autographic Register Co., 126 N.J. Eq. 18 (Ch. 1939). It is not an arbitrary rule to bar reasonable inferences to the contrary. Hammlen v. Rednalloh Co., 291 Mass. 119, 197 N.E. 149; 99 A.L.R. 1230 (Mass. Sup. Jud. Ct. 1935). It is "simply a device for determining the intent of the parties and subject, of course, to all of the other considerations that are necessarily involved in determining such intent." Dorris v. Center, 284 Ill. App. 344, 1 N.E.2d 794 (Ill. App. Ct. 1936).
The company also points to another part of the policy, entitled "Exclusions," which states that
"This policy excludes coverage: * * *
(d) under Divisions 1 and 6 of the Definition of Hazards, for liability with respect to which insurance is or can be afforded under Division 3 of the Definition of Hazards; * * *."
The plaintiff procured no insurance in Division 3.
Division 3 is headed "Products." The premium for insurance on products is based on "Sales" at so much "Per $1,000." Under definition of hazards we find:
"Division 3. Products. The handling or use of or the existence of any condition in goods or products manufactured, sold, handled or distributed by the Named Insured, if the accident occurs after the Insured has relinquished possession thereof to others and away from *294 premises owned, rented or controlled by the Insured; and operations covered under Divisions 1 and 6 of the Definition of Hazards (other than pick-up and delivery and the existence of tools, uninstalled equipment and abandoned or unused materials), if the accident occurs after such operations have been completed or abandoned at the place of occurrence thereof and away from such premises."
A careful and repeated reading of exclusion (d) and of Division 3 of the definition of hazards, only emphasizes the vagueness and ambiguity of the policy. We are satisfied, however, that an excavator's liability insurance is not offered under the heading "Products."
The whole policy must be considered in order to arrive at the true construction. It must be construed most strongly against the insurer and in favor of the insured. Cohen v. Mutual Benefit, etc., Ass'n., 134 N.J. Eq. 499 (Ch. 1944). "If the terms used are imperfect, it is the fault of the defendants." Snyder v. Dwelling House Ins. Co., 59 N.J.L. 544 (E. & A. 1896).
The obvious object of the plaintiff in procuring this policy was indemnity against liability on tort claims growing from his operations as an excavator. The company seems, in general, to have intended by the policy to afford him such indemnity for a limited period, the policy year. Except as particular provisions of the policy so curtail its scope that an ordinarily intelligent man would understand that the policy does not cover certain risks which come within its general scope  with that exception, the policy should be construed to cover all liability for accidents arising from plaintiff's operations, whether the accidents happened before or after the excavation job was finished. We agree with the trial court that the company is liable on its policy in respect to the claim that was asserted against plaintiff.
The judgment is affirmed.