GREAT AMERICAN INSURANCE COMPANY v. TRIPLETT

No. 42224 March 12, 1962 139 So. 2d 357

*C. W. Ford,* Pascagoula, for appellant.

818

*Cumbest & Cumbest*, Pascagoula, for appellees.

JONES, J.

Diane Triplett, a minor, sued Fernandez, Inc., and alleged that a twelve year old child went to a service station operated by Fernandez, Inc., to purchase a quart of kerosene and that said child stated to the attendant at said service station that she wanted to purchase some kerosene; that an attendant took the container and filled it with gasoline. It is further alleged that the child took the gasoline home and the mother of the child, believing the contents of the container to be kerosene, poured it into the lamp which immediately exploded, setting fire to the plaintiff, Diane Triplett, causing personal injuries. The child who purchased the gasoline was the sister of Diane Triplett, the plaintiff in said cause. Fernandez, Inc., defaulted in said suit and upon writ of inquiry a judgment was entered in favor of Diane Triplett against Fernandez, Inc., for $10,000 and costs. Thereupon Diane Triplett filed a suggestion that Great American Insurance Company, appellant, was indebted to Fernandez, Inc., and a writ of garnishment was served upon appellant, herein called Insurer. Insurer answered that it was not indebted. Diane Trip-

lett, the judgment holder, traversed the answer of the Insurer and attached thereto a copy of a garage liability policy issued by Insurer to Fernandez, Inc., hereinafter called Insured. This policy is called a "Garage Liability Policy". The name of the Insured is Fernandez, Inc. The pertinent provisions of the policy are as follows:

"Coverage A—Bodily Injury Liability

To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the hazards hereinafter defined."

"Coverage B—Property Damage Liability

To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident and arising out of the hazards hereinafter defined."

DEFINITION OF HAZARDS

"Division 1. Premises—Operations—Automobiles

"The ownership, maintenance or use of the premises for the purpose of an automobile sales agency, repair shop, service station, storage garage or public parking place, and all operations necessary or incidental thereto; and the ownership, maintenance or use of any automobile in connection with the above defined operations, and the occasional use for other business purposes and the use for non-business purposes of (1) any automobile owned by or in charge of the named insured and used principally in the above defined operations, and (2) any automobile owned by the named insured in connection with the above defined operations for the use of

the named insured, a partner therein, an executive officer thereof, or a member of the household of any such person.''

Division 3 is not pertinent and covers elevators.

Coverage C has reference to medical payments and Coverage D to property of others in charge of the named insured. There are no other coverages contained in the policy.

The pertinent provisions of the exclusions are as follows:

''This policy does not apply:
'' * * *

''(f) under coverage B, to injury to or destruction of * * * (3) any goods or products manufactured, sold, handled or distributed or premises alienated by the named insured, or work completed by or for the named insured, out of which the accident arises; . * * *.''

The insurer filed a reply to the traverse and denied coverage under the policy.

Jury trial was waived and the cause was submitted on the pleadings, and judgment was entered in favor of Diane Triplett against insurer for $10,000 and costs. The insurer appealed to this Court with supersedeas.

The appellant argues that the policy did not afford products liability coverage and that the liability of insured was not based upon an accident within the meaning of said policy, citing Womack v. Employers Mutual Liability Ins. Co., 233 Miss. 110, 101 So. 2d 107. There are no other cases cited which, in our opinion, are pertinent to the inquiry.

██ ██ We are of the opinion that there is no merit to the contention that the injuries to Diane Triplett were not due to an accident within the meaning of said policy.

The sole question is whether the liability imposed upon insured was within the coverage of the policy.

In Insurance Law and Practice, Appleman, Vol. 7A, Sec. 4508, products liability is discussed. The author says: "It may be difficult for an untrained layman to understand the nature of coverages written, but that, alone, does not warrant distorting the risks undertaken. Such a layman might not even be aware of the fact that such various coverages are available unless he seeks out the information, even as he might be ignorant of the fact that there are such things as fidelity bonds or contractors' completion bonds. But people in the insurance business, and practitioners of law, ought to be aware of such coverages, their purposes, and their construction. It is scarcely just either to deprive a purchaser of the protection he is entitled to receive or to extend one type of coverage to fit a completely different situation from that contemplated.

"It is apparent that liability under what we ordinarily term 'public liability' coverages can arise fundamentally in three distinct ways. An injury or a loss may result while an activity is in progress, and prior to the completion thereof, either as the result of an act of negligence or an omission. That is what is embraced within the ordinary liability aspect of a public liability policy. But if the operation has been completed, and liability results thereafter either by reason of a defect in merchandise or improper workmanship, that is called 'products liability' or 'completed operations', the protection of which can be purchased for a premium. Neither type of coverage is intended to supplant the other, nor would the premiums charged be adequate for that purpose.

"Then there is a third possible type of loss—and that is damage to the product itself, whether it be a shipment of benzene, a job of plumbing, or a carload of eggs. If the risk which the parties have contemplated is the possibility of personal injury or property damage to others caused from work or materials, the phase of

loss to the customer by reason of breach of warranty or negligence giving the customer less than what he expected to receive may not have occurred to the customer. But usually it does to the insurer, and such a risk ordinarily is specifically excepted from products liability coverage.''

██ ██ It is to be noted that the policy in question under ''Definition of Hazards'', covers ''The ownership, maintenance or use of the premises for the purpose of an automobile sales agency, * * *, service station, * * *, and all operations necessary or incidental thereto.'' There is an exclusion applicable only to Coverage B, which describes property damage liability, which excludes products liability coverage as to property damage. In our opinion this exclusion is not intended to relieve the insurer from liability for bodily injuries occurring off the insured's premises.

In Fidelity and Casualty Ins. Co. v. Fratarcangelo, 201 Va. 672, 112 S. E. 2d 892, the policy was a general liability policy and products liability was not purchased although that liability was provided as Division 4 under the Definition of Hazards. But the insured did not pay any premium for that coverage. The liability imposed or sought to be imposed upon the insured in that case, was the negligent plugging of an outlet in a laundry stove. This was done by an employee of the insured on the premises and before the stove was sold. The purchaser of the stove took it home and upon the first use thereof, it exploded, injuring two of the purchaser's children. The Virginia Court stated that the negligent act complained of took place on the insured's premises and that the operation, which consisted of the negligent act of plugging the outlet in the stove took place on the premises and that the insurer was liable.

There are many cases from other jurisdictions involving similar questions to the one here involved. The policies vary as to the definition of the hazards and

as to the exclusions. Many policies specifically exclude accidents occurring away from the premises. This policy does not. Another case more or less bearing upon the question involved is Lieberman v. New Amsterdam Casualty Co., 284 App. Div. 1051, 135 NYS 2d 850.

In Reed Roller Bit Co. v. Pacific Employers Ins. Co., 198 F. 2d 1 (5th CCA), it was held that insurance covering "the ownership, maintenance or use of the premises, and all operations during the policy period which are necessary or incidental thereto" covered an injury sustained off the premises resulting from a negligent representation made for the purpose of or reasonably calculated to induce reliance on the representation. The court there stated:

"The appellee argues with much force that the representations of Reed's salesman were 'completed' when made and, that the accident occurring thereafter, such representations and Reed's liability therefor could have been insured under the second clause of the 'Products' hazard, and hence under Exclusion (d) were excluded from the 'Premises — Operations' hazard; that completed operations are excluded from the 'Premises — Operations' coverage under the policy. Considering the alleged representations of Reed's Agent to be 'operations' were they operations which had been completed before the accident occurred such as would come within the coverage under 'products' and be excluded from the coverage under 'Premises — Operations'? To answer in the affirmative would result in relieving the Insurance Company from any liability for negligent representations of the agents or salesmen of the insured because, of course, no person could be injured as a result of acting upon a negligent representation until after the representation had been made to him. We hold that an operation consisting of a negligent representation made for the purpose of or reasonably calculated to induce action is not completed until the person to

whom the representation is made acts in reliance upon that representation.'' See also Swillie v. General Motors Corp., et al., (La.), 133 So. 2d 813.

We are of the opinion that the policy in question afforded liability for accidents and injuries occurring off the premises as a result of the negligence of the insured in carelessly substituting gasoline for kerosene and that the negligent act of the attendant at insured's service station was an operation incident to the business being conducted thereon on the premises by the insured.

We are fortified in our conclusions by the fact that the policy excluding liability from what is generally known as products liability coverage referred only to Coverage B—property damage, and by the rule universally applied by this and other courts that all doubtful questions in insurance polices are resolved in favor of the insured.

If the insured had desired to exclude the liability here involved, it could have done so by excluding liability for accidents occurring off its premises. It did not do so. Compare Hulquist, et al. v. Novak, etc., 278 N. W. 524.

Affirmed.

*Kyle, Gillespie, McElroy* and *Rodgers, JJ.,* concur.