**CHEMTEC MIDWEST SERVICES, INC.,**
an Ohio corporation, Plaintiff,

v.

**INSURANCE COMPANY OF NORTH AMERICA,** a stock insurance company of Pennsylvania, Defendant.

No. 66-C-30.

United States District Court
W. D. Wisconsin.

Aug. 27, 1968.

Charles J. Kersten and Kenan J. Kersten, Milwaukee, Wis., for plaintiff.

James E. Garvey, Eau Claire, Wis., for defendant.

## OPINION AND PARTIAL DECLARATORY JUDGMENT

JAMES E. DOYLE, District Judge.

Plaintiff (hereinafter Chemtec Midwest) is a corporation incorporated under the laws of the state of Ohio with its principal place of business in the state of Indiana. Defendant (hereinafter INA) is a stock insurance company organized under the laws of the state of Pennsylvania. The amount in controversy is in excess of the sum of $10,000, exclusive of interest and costs. The action is for declaratory judgment, pursuant to 28 U.S.C. § 2201, declaring the rights and legal relations as between the parties, with respect to the coverage of a certain liability insurance policy issued to Chemtec Midwest by INA. This court has jurisdiction pursuant to 28 U.S.C. § 1332(a). There is an actual controversy between the parties and the action is appropriate for declaratory judgment under 28 U.S.C. § 2201.

Chemtec Midwest contends that the policy covers a situation more fully described hereinafter. INA has responded: (1) that the situation falls within a policy exclusion referred to as the "care, custody or control" exclusion; and (2) that the term "caused by accident", as used in the policy, saves INA from any obligation to Chemtec Midwest in the situation here present.

Trial of the issues related to the "care, custody or control" defense was had to the court, by agreement of the parties. The court ordered that evidence received at that trial which might be relevant to both defenses would be received only in relation to the "care, custody or control" defense. I concluded on the basis of this evidence that the "care, custody or control" exclusion was not applicable to the situation in question and accordingly entered a partial declaratory judgment to that effect on January 29, 1968, 279 F.Supp. 539 (W. D.Wis.1968).

Thereafter, following a pretrial conference, the parties were invited to submit to the court memoranda stating their respective positions with regard to the definition of the term "caused by accident" in the INA policy together with citation and discussion of pertinent authority. On the basis of these briefs the court has undertaken to enter a partial interlocutory judgment declaring the definition of "caused by accident" as the phrase appears in the INA policy. In reaching its decision, in addition to the memoranda submitted by the parties and the relevant legal authorities, the court has considered only the insurance policy itself and the pleadings in the related action of Sterling Pulp & Paper Co. v. Chemtec Midwest Services, Inc., C–64–72.

On or about March 31, 1963, INA issued a one-year term "comprehensive general liability policy", CGL 20 29 93, in which Chemtec Services, Inc., the parent company of Chemtec Midwest, was to be named insured. Endorsement No. 1, also effective March 31,* 1963, provided that "the name of the insured is indicated to read as follows: Chemtec Services, Inc. [the parent company], Chemtec Midwest, Inc. [plaintiff herein], Dix Chemical Services, Inc., Coast Tank Services, Inc., McCormicks Chemi-

cal and Inspection Company, Inc., Chemtec Pacific Services, Inc., Chemtec Eastern Services, Inc., Walker Chemtec Services, Inc." The "Business of the Named Insured" is stated to be the "chemical cleaning of boilers and blast furnaces." By the terms of the policy INA agreed to pay on behalf of Chemtec Midwest (and the other named insureds) "all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, *caused by accident.*" (emphasis added) The policy further provides, "With respect to such insurance as is afforded by this policy, the company shall  *  * defend any suit against the insured alleging such injury  *  *  * or destruction.  *  *  *"

On July 30, 1964, there was commenced in the Circuit Court for Eau Claire County, Wisconsin, an action by Sterling Pulp & Paper Company (hereinafter Sterling), a Wisconsin corporation which operates a plant in the City of Eau Claire, Wisconsin, against Chemtec Midwest. Chemtec Midwest removed said action to this court and it is pending here as case number C–64–72. The complaint in said action by Sterling alleges that in May, 1963, Chemtec Midwest made an offer to clean chemically two large boilers owned and operated by Sterling at its plant; that Chemtec Midwest made certain warranties; that in September, 1963, Sterling accepted the offer in reliance on the warranties; "[t]hat on or about the 29th day of September, 1963, [Chemtec Midwest] did through its employees and agents enter upon the property of the plaintiff in pursuance to said contract and did proceed to chemically clean said boilers in accordance with its own methods and using its own chemicals and materials"; that except for the need of cleaning, the boilers were in good condition; that Sterling performed its obligations under

---

* It appears that the policy proper was originally typed to commence March 16, that "16" was erased and "31" inserted, but that the date was not altered on the endorsement. I find no significance in this and treat the endorsement as if it read "31".

the contract "including the turning over to it [Chemtec Midwest] of the boilers in question in sound and satisfactory condition and the furnishing of commercial grade soda ash for the use of [Chemtec Midwest] as required by said contract"; that "shortly after the commencement of the services of [Chemtec Midwest] it was discovered by [Sterling] that the materials and methods used by [Chemtec Midwest] were causing serious damage to the tubes, drums, plates and other parts of said boilers by reason of acid corrosion destroying the surface and structural integrity of said parts"; and that Sterling was in fact damaged in the total amount of $123,-035.53 by reason of Chemtec Midwest's failure properly to discharge the services represented and warranted in the contract. In a separate count, Sterling alleged the same damages to have resulted from Chemtec Midwest's negligent use of improper acid and materials, negligent failure to use proper chemicals and methods to counteract the action of said acid, negligent failure to use an adequate inhibitor for the acid concentration used, negligence with respect to the temperatures under which the cleaning operation was conducted, and negligent failure to observe the usual custom and practice and required procedures for the cleaning operation.

INA has declined to take any action in this matter on behalf of Chemtec Midwest on the grounds noted above: (1) that the situation falls within the "care, custody or control" exclusion; and (2) that the allegations do not describe damage "caused by accident" within the meaning of the policy.

It is the meaning of the term "caused by accident" in the insurance policy which the court is now called upon to define. In the opinion and partial declaratory judgment of January 29, 1968, I have already determined that the law of New Jersey governs the construction of this policy.

New Jersey adheres to the well settled rule that the obligation of an insurer under a liability insurance policy provision requiring it to defend an action brought against the insured by a third party is to be determined by the allegations in the complaint in such action. Danek v. Hommer, 28 N.J.Super. 68, 100 A.2d 198, aff'd, 15 N.J. 573, 105 A.2d 677 (1953); McAllister v. Century Indemnity Co., 24 N.J.Super. 289, 94 A. 2d 345, aff'd, 12 N.J. 395, 97 A.2d 160 (1953).

In construing the policy, the court is mindful of the well established rule that in case of doubt or ambiguity, the interpretation which favors the insured must be adopted. Washington Theatre Co., Inc. v. Hartford Accident and Indemnity Co., 157 A. 111, 9 N.J. Misc. 1212 (1931). Beyond this rule, the courts of New Jersey (as well as many others) view such policies from what they determine to be the reasonable expectations of the average purchaser in light of the contract language so that clear, basic terms and particular provisions may not be disregarded and a new contract judicially fashioned for the parties. Linden Motor Freight Co., Inc. v. Travellers Insurance Co., 40 N.J. 511, 525, 193 A.2d 217, 224 (1963).

New Jersey courts have had few occasions to construe the term "caused by accident" in liability insurance policies. Minkov v. Reliance Insurance Company of Philadelphia, 54 N.J.Super. 509, 149 A.2d 260 (1959), relied upon by Chemtec Midwest, presents a factual situation analogous to that in the case at bar. In *Minkov* the insurer agreed "to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury or destruction to property, including the loss of use thereof, caused by accident and arising out of the hazards hereinafter defined * * *." The insured undertook certain iron and steel erection work in connection with the construction of a building. This involved the installation of steel roof trusses. Upon commencing work, the insured discovered that the walls, constructed by another subcontractor, were not square and it, there-

fore, became necessary to exert pressure on the rafters to pull them into position. Although the employees of the insured were alerted to watch for signs of damage to the wall, a crack developed and the wall subsequently caved in. The foreman testified that this procedure was common and that this was the first such occurrence in his 28 years of experience. The insurer contended that the damage was foreseeable, expected, and not unusual and hence not accidental. The court rejected this reasoning:

"Defendant's argument that the damage to the wall was not unusual—not accidental because foreseeable—alluding here to the dictionary definition of 'accident' as an unforeseeable contingency—cannot prevail. * * * Although an intentional or wilful tort would negative the existence of an accident, an act attributable to negligence may be an accident. * * * To give the word 'accident' the meaning for which defendant (insurer) argues, would manifestly defeat the purpose of the policy which is to protect against liability in circumstances like those here present." 54 N.J.Super. 509, 514–515, 149 A.2d 260, 263.

The apparently broad scope of this opinion was questioned in Elcar Mobile Homes, Inc. v. D. K. Baxter, Inc., 66 N.J.Super. 478, 169 A.2d 509 (1961). In *Elcar* the insured contracted to remove paint from the side of a trailer house by sandblasting. This process allegedly caused the metal to "buckle". The court found that there were issues of fact as to whether the trailer was in the custody and control of the insured within the meaning of the policy and, accordingly, reversed an order by the trial court granting summary judgment for the insurer. While disposing of the action in this manner, the court commented that "it would seem that the argument might better have been advanced to the effect that the damage incident to the quality of the insured's workmanship, in the absence of some accidental means, would not constitute damages 'caused by accident'." 66 N.J.Super. 478, 485, 169 A.2d

509, 512. It was further explained that *Minkov* was not conclusive on this question since the policy in *Minkov* insured against accidents arising out of hazards which were so defined as to indicate that a broad scope of coverage was intended. The court did not decide this issue on the motion for summary judgment.

Washington Theatre Co., Inc. v. Hartford Accident and Indemnity Co., supra, cited by plaintiff, involved the construction of language slightly different than that in the policy in the case at bar. In that case the insured sought to recover expenses incurred in successfully defending an action by a patron agaist the insured for negligently allowing another patron to assault her. The insured was covered by a liability policy in which the insurer agreed "to pay any loss by liability imposed by law upon the assured for bodily injuries * * * accidentally sustained * * * by any person not employed by the assured. * * *" The court held for the insured, stating:

"It is quite clear that the word 'accidentally' is not used here in its primary sense as a purely fortuitous happening—the kind of event which cannot and does not give rise to any kind of action. The plaintiff (insured) would hardly be willing to pay for the insurance against liability arising from such happening as there would be no liability in such case. Obviously, therefore, it is not against purely accidental injuries that plaintiff insured itself, for it would not be liable for such accidents in any event. It is equally clear that defendant would not and did not intend to insure the plaintiff against liability for wilful injury inflicted by the plaintiff upon another. It seems to follow, therefore, that what the policy was intended to cover was the class of cases between those two extremes, namely injuries due to or caused by the negligence of the insured." 157 A. 111, 113, 9 N.J.Misc. 1212, 1215–1216.

Although the words "accidentally sustained" in the *Washington Theatre* poli-

cy appear to have the same meaning to the average purchaser as the words "caused by accident", there is some authority for the proposition that a broader coverage is intended by the words "accidentally sustained", this term being more clearly intended to provide coverage for damage unintentionally sustained. See Aerial Agricultural Service of Mont., Inc. v. Till, 207 F.Supp. 50 (D. C.Miss.1962); Travelers Insurance Co. v. Reed Co., 135 S.W.2d 611 (Tex.Civ. App.1939); annotation 7 A.L.R.3d 1273, 1274.

Malanga v. Manufacturers Casualty Insurance Co., 28 N.J. 220, 146 A.2d 105 (1958), cited by plaintiff, is inapplicable. That case involved a policy in which assault and battery were included in the definition of accident, unless committed by or at the direction of the insured. The definition of insured included any partner of the insured partnership. The question was whether all of the partners were excluded from coverage because the assault had been committed by one of the partners. The court found coverage, but it appears to have applied basic partnership principles rather than a particular definition of the term "accident" to reach this conclusion.

The cases cited by defendant, with the exception of Elcar Mobile Homes, Inc. v. D. K. Baxter, Inc., supra, do not involve liability insurance policies and are, therefore, not applicable here. Moreover, the cases on which defendant relies involve substantially different language than that in the policy in the present case.

New Jersey law has not become settled with respect to the meaning of "caused by accident" in liability insurance policies. While it is clear that damage resulting from the negligence of the insured is not necessarily excluded from coverage, it is not clear whether all types of negligence result in liability which is covered. The sense of the cases favors a construction that "caused by accident" refers to damage by the insured which is not done wilfully or intentionally.

This construction finds support in the case law of other jurisdictions. While it is well settled that liability for negligence is not necessarily excluded from coverage under such a policy, see, e. g., Bundy Tubing Co. v. Royal Indemnity Co., 298 F.2d 151 (6th Cir.1962); Cross v. Zurich Central Accident & Liability Insurance Co., 184 F.2d 609 (7th Cir. 1950); City of Aurora, Colo. v. Trinity Universal Insurance Co., 326 F.2d 905 (10th Cir.1964); annotation 7 A.L.R.3d 1265–1266, there is a split of authority with regard to the types of negligence which are covered under such a policy.

A few courts have construed "caused by accident" to exclude coverage for liability for the natural and probable consequences of the negligence of the insured. See City of Aurora, Colo. v. Trinity Universal Insurance Co., supra (applying Colo. law); Albuquerque Gravel Products Co. v. American Employers Insurance Co., 282 F.2d 218 (10th Cir. 1960) (applying N. Mex. law); Hutchinson Water Co. v. United States Fidelity & Guaranty Co., 250 F.2d 892 (10th Cir.1957) (applying Kansas law). The weakness of this view is that it limits coverage to a very narrow category of situations, as noted by the court in Hutchinson Water Co. v. United States Fidelity & Guaranty Co., supra:

"Apparently we did not contemplate whither this logic would lead us. For, if the policy did not cover the loss because the natural and probable consequences of the negligent act did not constitute an accident, then by the same logic, there would be no liability where the damage was the unexpected, hence unforseen result of the negligent act. In the first instance, the damage would be foreseeable and therefore not accidental; in the latter instance, the damage would not be foreseeable and hence no liability on the insured for his negligent acts. In either instance, the insurer would be free of coverage and the policy would

be rendered meaningless." 250 F.2d 892, 894.

A larger number of jurisdictions have adopted the view that "caused by accident" excludes liability for damages intentionally or wilfully inflicted but includes liability for damages resulting from the negligence of the insured. See Bowman Steel Corp. v. Lumbermens Mutual Casualty Co., 364 F.2d 246 (3d Cir. 1966) (applying Pa. law); Koehring Co. v. American Automobile Insurance Co., 353 F.2d 993 (7th Cir.1965) (applying Wis. law); Bundy Tubing Co. v. Royal Indemnity Co., supra (applying Mich. law); Cross v. Zurich General Accident & Liability Insurance Co., supra (applying Ill. law); Massachusetts Bonding & Insurance Co. v. Orkin Exterminating Co., 416 S.W.2d 396 (Tex.Civ.App. 1967); Vappi and Co. v. Aetna Casualty & Surety Co., 348 Mass. 427, 204 N.E.2d 273 (1965); Great American Insurance Co. v. Triplett, 243 Miss. 815, 139 So.2d 357 (1962); Corbetta Construction Co. v. Michigan Mutual Liability Co., 20 A. D.2d 375, 247 N.Y.S.2d 288, aff'd 15 N. Y.2d 888, 258 N.Y.S.2d 423, 206 N.E.2d 357 (1964).

Several of these cases are noteworthy because they involve factual situations similar to the circumstances in the present case. In Bowman Steel Corp. v. Lumbermens Mutual Casualty Co., supra, coverage was found where steel siding, consisting of asbestos bonded onto steel sheets, proved defective, became discolored, and began to delaminate, resulting in the diminution of the market value of the buildings to which it was attached. In Koehring Co. v. American Automobile Insurance Co., supra, the installation of the wrong type of hydraulic cylinders in cement mixers which resulted in the breakdown of the mixers was held to be covered. In Massachusetts Bonding & Insurance Co. v. Orkin Exterminating Co., supra, "caused by accident" was held to cover damage resulting from the negligent application of a pesticide to rice mill facilities. In Great American Insurance Co. v. Triplett, supra, coverage was found for injuries sustained by a child as the result of an explosion of gasoline negligently substituted for kerosene which the child's sister sought to purchase at insured service station.

The court is of the opinion that the approach of these cases represents the better view and is most in accord with the reasonable expectations of the average purchaser of general liability insurance in the light of the contract language. At least one New Jersey court has indicated a reluctance to accept the view that liability for the natural and probable consequences of the negligence of the insured is not encompassed by the term "caused by accident". See Schwartz v. John Hancock Mutual Life Insurance Co., 96 N.J.Super. 520, 233 A.2d 416 (1967), aff'd 99 N.J.Super. 223, 293 A.2d 248 (1968).

Defendant further contends, however, that a distinction must be drawn between "accidental means" and "accident result", and that "caused by accident" excludes liability for damage that does not result from "accidental means". By this distinction is apparently meant that not only the injury, but also the immediate cause of the injury must be unusual and unexpected. Presumably the application of this distinction requires the court to isolate each event in the chain of causation leading up to the injury. If the event immediately preceding the injury is the negligent act of the insured, then, under the distinction urged by defendant, there is no coverage. For coverage to attach under this test the negligent act must result in an unusual and unexpected event which in turn directly causes the damage or destruction. In actuality, this test appears to be no more than a refinement of the natural and probable consequences test, see Thomason, Contractor v. United States Fidelity & Guaranty Co., 248 F.2d 417 (5th Cir.1957); City of Aurora, Colo. v. Trinity Universal Insurance Co., supra.

Generally, this distinction has not been applied in the case of liability insurance policies, but has been reserved for double indemnity provisions of life

insurance policies. Defendant now seeks to import the distinction into the construction of liability policies as well. While this distinction may arguably have some utility in the case of a double indemnity provision of a life insurance policy where the focus is on the occurrence of a specific event—an accident—it appears to be neither useful in the construction of a liability policy nor consistent with the expectations of the average purchaser of such a policy.

Even with regard to its use in the construction of double indemnity provisions, the distinction was characterized by Justice Cardozo as impossible to apply and as threatening to plunge the law into a "Serbonian Bog", Landress v. Phoenix Mutual Life Insurance Co., 291 U.S. 491, 499, 54 S.Ct. 461, 78 L.Ed. 934 (1934). In the instant case, for example, would an unexpected type or degree of chemical activity arising from the negligence of the insured constitute an unusual and unexpected event which in turn caused damage to the boilers, or would such chemical activity merely be a part of the negligent act, which negligent act, therefore, would be the event immediately preceding the injury?

The cases cited by defendant are inapplicable not only because they involve double indemnity provisions of life insurance policies, but also because the language of the provisions in question in those cases differs significantly from the language in the provision in the policy presently before the court. In Linden Motor Freight Co., Inc. v. Travellers Insurance Co., supra, the insurer agreed to pay for "bodily injuries effected directly and independently of all other causes through external, violent and *accidental means.*" (emphasis added) In Harris v. John Hancock Mutual Life Insurance Co., 41 N.J. 565, 197 A.2d 863 (1964), the insurer agreed to pay for disability arising out of bodily injuries sustained "as the direct result of an accident independent of other causes"; while "accidental means" is not used here, the language of the provision clearly distinguishes between "result" and "accident".

Schwartz v. John Hancock Mutual Life Insurance Co., supra, reflects a reluctance on the part of the New Jersey courts to apply this distinction even in the case of double indemnity provisions if the policy language does not clearly contemplate such a distinction.

I decline to import the distinction urged by defendant into the construction of a general liability insurance policy. It does not appear in any of the cases construing liability insurance policies under New Jersey law, nor does it appear in the vast majority of cases construing such policies in other jurisdictions. In addition, it does not appear to be the reasonable expectation of the average purchaser in light of the contract language. Moreover, when insurance is purchased to cover the operation of a business such as that in which Chemtec Midwest is engaged, and the policy is described in the broad terms "comprehensive general liability policy", it seems highly unlikely that the average purchaser would conclude that the policy was intended to have the narrow coverage contended for by INA in the absence of unambiguous language to the contrary in the policy.

▪ Accordingly, for the purposes of this interlocutory declaration, I define the term "injury to or destruction of property * * * caused by accident" to mean injury to or destruction of property not wilfully or intentionally inflicted but caused by negligence of the insured.

As explained earlier, for the purpose of this interlocutory declaration, I have considered only the language of the policy and the pleadings in Sterling Pulp and Paper Co. v. Chemtec Midwest Services, Inc. Neither party to this action is foreclosed from presenting evidence which may affect this interlocutory construction.