**CHEMTEC MIDWEST SERVICES, INC.,**
an Ohio corporation, Plaintiff,

v.

**INSURANCE COMPANY OF NORTH AMERICA,** a stock insurance company of Pennsylvania, Defendant.

No. 66–C–30.

United States District Court
W. D. Wisconsin.

Sept. 17, 1968.

Charles J. Kersten and Kenan J. Kersten, Milwaukee, Wis., for plaintiff.

James E. Garvey, Eau Claire, Wis., for defendant.

## OPINION AND PARTIAL DECLARATORY JUDGMENT

JAMES E. DOYLE, District Judge.

Plaintiff (hereinafter Chemtec Midwest) is a corporation incorporated under the laws of the state of Ohio with its principal place of business in the state of Indiana. Defendant (hereinafter INA) is a stock insurance company organized under the laws of the state of Pennsylvania. The amount in controversy is in excess of the sum of $10,000, exclusive of interest and costs. The action is for declaratory judgment, pursuant to 28 U.S.C. § 2201, declaring the rights and legal relations as between the parties, with respect to the coverage of a certain liability insurance policy issued to Chemtec Midwest by INA. This court has jurisdiction pursuant to 28 U.S.C. § 1332(a). There is an actual controversy between the parties and the action is appropriate for declaratory judgment under 28 U.S.C. § 2201.

Chemtec Midwest is engaged in the business of cleaning boilers and blast furnaces by means of a chemical process. An action more fully described hereinafter has been brought against Chemtec Midwest by Sterling Pulp & Paper Company (hereinafter Sterling) for damage allegedly done by Chemtec Midwest in applying its process to Sterling's boilers. Sterling's action against Chemtec Midwest is in two counts: (1) for negligence and (2) for breach of warranty. Chemtec Midwest contends that the policy covers both phases of its potential liability to Sterling. INA has responded: (1) that the situation falls within a policy exclusion referred to as the "care, custody or control" exclusion; and (2) that the term "caused by accident", as used in the policy, saves INA from any obligation to Chemtec Midwest with respect to its potential liability to Sterling for negligence or breach of warranty, or both.

After a trial of the issues related to the "care, custody or control" defense was had to the court by agreement of the parties, I concluded that this exclusion was not applicable to the situation in question and accordingly entered a partial declaratory judgment to that effect on January 29, 1968. 279 F.Supp. 539 (W.D.Wis.1968).

Thereafter, following a pretrial conference, the parties were invited to submit to the court memoranda stating their respective positions with regard to the definition of the term "caused by accident" in the INA policy. On the basis of these briefs, the language of the policy itself, and the allegations of Sterling's complaint against Chemtec Midwest, I defined the term "injury to or destruction of property * * * caused by accident", as it appears in the INA policy, to mean "injury to or destruction of property not wilfully or intentionally inflicted but caused by negligence of the insured", and a partial declaratory judgment to that effect was entered on August 27, 1968, 288 F.Supp. 763 (W.D.Wis.1968).

In view of the latter interlocutory opinion, it is now the contention of INA that its policy coverage does not extend to liability which may be determined in the action against Chemtec Midwest unless it is determined by a court or a jury that the conduct of Chemtec Midwest constituted negligence. More specifically, INA contends that its policy coverage does not extend to breach of warranty

by Chemtec Midwest unless it is determined that the conduct of Chemtec Midwest which constituted breach of warranty also constituted negligence. Chemtec Midwest disputes this contention, arguing that there can be no finding of breach of warranty distinct from a finding of negligent conduct by Chemtec Midwest in the situation in question.

Both parties wish to have this issue resolved presently, so far as possible. This additional partial declaratory judgment is intended to respond to this desire of the parties.

On or about March 31, 1963, INA issued a one-year term "comprehensive general liability policy", CGL 20 29 93, in which Chemtec Services, Inc., the parent company of Chemtec Midwest, was to be the named insured. Endorsement No. 1, also effective March 31 *, 1963, provided that "the name of the insured is indicated to read as follows: Chemtec Services, Inc. [the parent company], Chemtec Midwest, Inc. [plaintiff herein], Dix Chemical Services, Inc., Coast Tank Services, Inc., McCormicks Chemical and Inspection Company, Inc., Chemtec Pacific Services, Inc., Chemtec Eastern Services, Inc., Walker Chemtec Services, Inc." The "Business of the Named Insured" is stated to be the "chemical cleaning of boilers and blast furnaces." By the terms of the policy INA agreed to pay on behalf of Chemtec Midwest (and the other named insureds) "all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident." The policy further provides, "With respect to such insurance as is afforded by this policy, the company shall * * defend any suit against the insured alleging such injury * * * or destruction. * * * "

On July 30, 1964, there was commenced in the Circuit Court for Eau Claire County, Wisconsin, an action by Sterling, a Wisconsin corporation which operates a plant in the City of Eau Claire, Wisconsin, against Chemtec Midwest. Chemtec Midwest removed said action to this court and it is pending here as case number C–64–72. The complaint in said action by Sterling alleges that in May, 1963, Chemtec Midwest made an offer to clean chemically two large boilers owned and operated by Sterling at its plant; that Chemtec Midwest "did warrant and represent to [Sterling] that it was equipped to satisfactorily clean said boilers without damage thereto"; that in September, 1963, Sterling accepted the offer in reliance on Chemtec Midwest's "representation and warranty that it could and would perform such service in a satisfactory manner without damage to the property or equipment of [Sterling]"; "[t]hat on or about the 29th day of September, 1963, [Chemtec Midwest] did through its employees and agents enter upon the property of the plaintiff in pursuance to said contract and did proceed to chemically clean said boilers in accordance with its own methods and using its own chemicals and materials"; that except for the need of cleaning, the boilers were in good condition; that Sterling performed its obligations under the contract "including the turning over to it [Chemtec Midwest] of the boilers in question in sound and satisfactory condition and the furnishing of commercial grade soda ash for the use of [Chemtec Midwest] as required by said contract"; that "shortly after the commencement of the services of [Chemtec Midwest] it was discovered by [Sterling] that the materials and methods used by [Chemtec Midwest] were causing serious damage to the tubes, drums, plates and other parts of said boilers by reason of acid corrosion destroying the surface and structural integrity of said parts"; and that Sterling was in fact damaged in the total amount of $123,035.53 by rea-

---

* It appears that the policy proper was originally typed to commence March 16, that "16" was erased and "31" inserted, but that the date was not altered on the endorsement. I find no significance in this and treat the endorsement as if it read "31".

son of Chemtec Midwest's failure properly to discharge the services represented and warranted in the contract. In a separate count, Sterling alleged the same damages to have resulted from Chemtec Midwest's negligent use of improper acid and materials, negligent failure to use proper chemicals and methods to counteract the action of said acid, negligent failure to use an adequate inhibitor for the acid concentration used, negligence with respect to the temperatures under which the cleaning operation was conducted, and negligent failure to observe the usual custom and practice and required procedures for the cleaning operation.

The question is whether Chemtec Midwest's liability for the alleged breach of the warranty allegedly made by Chemtec Midwest to perform its service in a satisfactory manner without damage to property or equipment is covered by the policy in question, specifically by the term "caused by accident".

In the opinion and partial declaratory judgment of January 29, 1968, I have already determined that the law of New Jersey governs the construction of this policy.

■ New Jersey adheres to the well settled rule that the obligation of an insurer under a liability insurance policy provision requiring it to defend an action brought against the insured by a third party is to be determined by the allegations in the complaint in such action, Danek v. Hommer, 28 N.J.Super. 68, 100 A.2d 198, aff'd 15 N.J. 573, 105 A.2d 677 (1953); McAllister v. Century Indemnity Co., 24 N.J.Super. 289, 94 A. 2d 345, aff'd 12 N.J. 395, 97 A.2d 160 (1953).

■■ In the construction of an insurance policy the rule is well established that in case of doubt or ambiguity, the interpretation which favors the insured must be adopted. Washington Theatre Co., Inc. v. Hartford Accident and Indemnity Co., 157 A. 111, 9 N.J. Misc. 1212 (Sup.Ct.1931). "[I]nsurance contracts must wherever possible be liberally construed in favor of a policyholder or beneficiary thereof, and strictly construed against the insurer in order to afford the protection which the insured sought in applying for the insurance", Boswell v. Travelers Indemnity Co., 38 N.J.Super. 599, 605, 120 A.2d 250, 253 (App.Div.1956); Schneider v. New Amsterdam Casualty Co., 22 N.J.Super. 238, 242, 92 A.2d 66, 68 (App.Div.1952). Where an insurance contract is uncertain and the intention of the parties is not clearly ascertainable from the policy itself, the courts will take into consideration the apparent object or purpose of the insurance and, in the context of the policy, the subject matter of the insurance, the situation of the parties, and the circumstances surrounding the making of the contract. Boswell v. Travelers Indemnity Co., supra, 38 N.J.Super. at 605, 120 A.2d at 253.

■ The court is aware of no case in which, in the absence of a provision specifically including or excluding coverage for liability for breach of warranty, the issue was raised whether the term "caused by accident" contemplates coverage for liability for breach of warranty. A discussion of a related point which is relevant to this issue is found in Elcar Mobile Homes v. D. K. Baxter, Inc., 66 N.J.Super. 478, 169 A.2d 509 (App.Div. 1961). In *Elcar* the insured contracted to remove paint from the side of a trailer house by sandblasting. The process allegedly caused the metal to "buckle". The insurer raised the "care, custody or control" defense and the trial court granted its motion for summary judgment. The Appellate Division found that there were issues of fact as to whether the trailer was in the care, custody or control of the insured within the meaning of the policy and reversed the order of the trial court granting summary judgment for the insurer.

Although not necessary to its holding, the Appellate Division discussed the purpose of the "care, custody or control" exclusion. The opinion cites F. D. Cooke, Jr., "Care, Custody or Control Exclu-

sions", 1959 Insurance Law Journal 7 (January), in which it is said, at page 9:

> " * * * [The 'care, custody or control' exclusion] also eliminates the possibility of the insured making the insurance company the guarantor of its workmanship.

> *"The liability policy contemplates payment generally where the ordinary degree of care is the measure of liability. The premium is determined on that basis.* Liability for damage to property in charge of or in the care, custody or control of the insured where there is a bailment is controlled by different rules of law, and as a practical result, the hazard is greatly increased." (Emphasis added.)

In regard to the policy involved and the guarantee of the workmanship of the insured, the court commented:

> "We should think that an accident policy such as the one before us does not guarantee workmanship, but if the insurance company thinks it needs to make that plain beyond dispute, it is a mystery to us why the insurer does not say so in simple language. It is not a concept difficult to express. [Citation omitted.]

> "In Innis v. McDonald, 150 N.E.2d 441, at p. 444 (C.P.1956), affirmed o.b. 150 N.E.2d 447 (Ct.App.1956), the court said, and it is applicable here, that 'It would seem that the argument might better have been advanced to the effect that the damage incident to the quality of the insured's workmanship, in the absence of some accidental means, would not constitute damages caused by accident. * *'"
> 66 N.J.Super. at 485, 169 A.2d at 512.

This reasoning is applicable to the issue presently before the court. As in the case of a bailment or a guarantee of the quality of the insured's workmanship, a warranty with regard to the condition which will result from the services of an insured exposes the insured to a greater measure of liability than that to which the insured is inevitably exposed by failure to exercise the ordinary degree of care. By warranting the result which will accrue from its services, the insured is, in effect, assuming a liability to which, but for the warranty, it would not be exposed. An insurance company would be naturally hesitant to provide coverage for whatever degree of liability the insured agrees to assume.

By its very terms it is impossible to apply "caused by accident" to the concept of warranty. The term "caused by accident" has reference to the character of the actions of the insured. Liability for these actions is measured by a particular degree of care, i. e., due care. Warranty, on the other hand, has reference, not to the character of the insured's actions, but to the result of those actions. The degree of care which marks those actions is irrelevant to liability when a warranty that damage will not occur has been made.

In the case at bar it is conceivable that damage might result even though the insured exercised due care in the application of its process to the boilers. There is no evidence that the policy contemplated coverage for liability more comprehensive than that which would arise from failure to exercise due care, nor is there any evidence that the insured, in contracting for the policy, sought coverage for liability for breach of warranty. In the absence of such evidence, I conclude that coverage under the policy does not extend to breach of warranty by Chemtec Midwest unless it is determined that the conduct of Chemtec Midwest which constituted breach of warranty also constituted negligence.

Neither party to this action is foreclosed from presenting evidence which may affect this interlocutory construction.